### EMPIRE EXCAVATING COMPANY
v.
### MARET DEVELOPMENT CORPO- RATION et al.
#### Civ. A. No. 73–148.

United States District Court,
W. D. Pennsylvania.

Feb. 4, 1974.

David L. McClenahan, Pittsburgh, Pa., for plaintiff.

Thomas H. Welsh, Pittsburgh, Pa., for defendants.

### OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

KNOX, District Judge.

The question before the court is whether a foreign business corporation may enforce its contractual claims for work performed in Pennsylvania, even though the foreign corporation did not obtain a Certificate of Authority to transact business within the Commonwealth pursuant to 15 Purdon's Pa.Stat. § 2001 until after the work was completed and suit begun.

This diversity action arises from the construction of the Murphy Mart Shopping Center on McKnight Road in McCandless Township, Allegheny County, Pennsylvania. The plaintiff Empire Excavating Company (Empire) seeks to recover for certain excavation and site preparation work it performed as a subcontractor in the development of the shopping center.

Empire executed a subcontract with the defendant Landau Brothers Building Company (Landau), which was the general contractor to the developer, defendant Maret Development Corporation (Maret). The defendant Aetna Casualty and Surety Company (Aetna) is the bonding company on the agreement between Landau and Maret. Empire's action against Aetna is based on this bond. Empire's action against Maret is based on unjust enrichment. We have previously denied Maret's motion for judgment on the pleadings on the grounds that it was not subject to liability on the basis of the facts pleaded.

The subcontract between Landau and Empire was executed in the Commonwealth of Pennsylvania and concerned work which was performed in 1972 in Pennsylvania. Empire is an Ohio corporation which until October 29, 1973,

had not registered [1] to do business within the Commonwealth of Pennsylvania. This lawsuit was filed on February 20, 1973.

On October 4, 1973, Landau and Aetna moved for summary judgment against Empire, asserting that under 15 Purdon's Pa.Stat. § 2014 Empire is disabled from enforcing its claim since it failed to register as required by 15 Purdon's Pa.Stat. § 2001. Although Empire complied with the registration requirement after the defendants filed their motions for summary judgment, the defendants have since taken the position that Empire's late registration did not cure the earlier non-compliance.

The Pennsylvania Business Corporation Law (BCL) Section 1001, 15 Purdon's Pa.Stat. § 2001, provides:

> "A foreign business corporation, before doing any business in this Commonwealth, shall procure a certificate of authority to do so from the Department of State . . . . "

Section 1014 of the B.C.L., 15 Purdon's Pa.Stat. § 2014 entitled "Penalty for doing business without certificate of authority" provides:

> "A. No foreign business corporation transacting business in this Commonwealth without a certificate of authority shall be permitted *to maintain* any action in any court of this Commonwealth until such corporation shall have attained a certificate of authority . . . . The failure of a foreign business corporation to obtain a certificate of authority to transact business in this Commonwealth *shall not impair the validity of any contract*

or act of such corporation and shall not prevent such corporation from defending any action in any court of this Commonwealth." (Act May 5, 1933, P.L. 364 as last amended by act Jan. 18, 1966, P.L. 1305)

At the outset, we note that the fact that Empire has brought this action in federal court will not affect the applicability of the Pennsylvania statutes. In Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), the Supreme Court held that a Mississippi statute that barred recovery "in any of the courts of this state" likewise barred recovery in the federal courts. In that case, the court folllowed the principal established in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938), that for purposes of diversity jurisdiction a federal court is, in effect, only another court of the state.

The question to be decided, then, is simply whether under Pennsylvania law subsequent compliance with the corporate registration statute will permit a foreign corporation to enforce its contractual rights arising prior to its domestication. We are aware of no Pennsylvania cases in which this narrow issue is decided.

As with comparable statutes in most other states, Section 1014 of the Pennsylvania BCL is, with insignificant adjustments, taken verbatim from Section 117 (now Section 124) of the Model Business Corporation Law (Model BCL).[2] Section 1014 does not expressly prohibit a foreign corporation from *instituting* any action. Rather, the stat-

---

1. Throughout this opinion, we use "register" to mean to comply with 15 Purdon's Pa. Stat. § 2001 in obtaining a certificate of authority to do business within Pennsylvania.

2. The text of Section 117 of the Model BCL is as follows:

"No foreign corporation transacting business in this State without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority.

\* \* \* \* \*

The failure of a foreign corporation to obtain a certificate of authority to transact business in this State shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this State." 2 Model Business Corporation Act Annotated § 117, p. 665.

ute says that a foreign corporation shall not *maintain* an action *until* the required certificate of authority has been obtained.

Although some courts have equated the word "maintain" with "commence", the majority view among courts interpreting similar statutes in other states is that "maintain" means to continue an action already begun. Those courts have held that compliance with the registration statute during the course of the lawsuit is sufficient to entitle a foreign corporation to continue its prosecution of that lawsuit. See cases cited in Annotation, *"Compliance after commencement of action as affecting application of statute denying access to courts or invalidating contracts where corporation fails to comply with the regulatory statute,"* 6 A.L.R.3d 326, 331–338 (1966); 23 Am.Jur.2d, Foreign Corporations § 282, page 285; Note, The Legal Consequences of Failure to Comply with Domestication Statutes, 110 U. Pa.L.Rev. 241, 266 (1961). See also 75 A.L.R. 453, 465. For examples of such cases see Kendrick and Roberts, Inc. v. Warren Brothers, 110 Md. 47, 72 A. 461 (1909); National Fertilizer Co. v. Fall River Bank, 196 Mass. 458, 82 N.E. 671 (1907); Commercial Credit Corp. v. Boyko, 103 N.J.L. 620, 137 A. 534 (1927); Vornado, Inc. v. Corning Glass Works, 255 F.Supp. 216 (D.N.J.1966).

The commentary to the Model BCL indicates a similar view:

> "Under the Model Act, a contract made by a nonqualified foreign corporation is not void but may be enforced by the foreign corporation by suit instituted after it qualifies. If suit has been instituted prior to qualification, the corporation may then qualify and continue its litigation without the necessity of refiling suit after qualification." 2 Model Business Corp. Act, Annotated § 117, p. 672.

The defendants, however, strongly contest this literal reading of the Pennsylvania BCL. They argue that if domestication in mid-suit cures prior non-compliance, the statute is rendered ineffectual. They state that under Pennsylvania law the only penalty for failure to register is the disability to bring suit. If that disability can be removed by subsequent compliance, foreign corporations need not register at all, unless and until they seek the aid of the Pennsylvania courts.

Hence, the defendants argue that the similarity between the Pennsylvania statute and the Model BCL is merely superficial. Unlike the Pennsylvania statute, the Model BCL imposes additional penalties that take into account the length of the period of non-compliance. Foreign corporations thus still have an incentive to register in Model BCL jurisdictions, even though later compliance removes the disability to bring suit. The defendants reinforce their argument by stating that the notes to Section 124 of the Model BCL do not list Pennsylvania's statute as "Identical", "Identical in Substance" or even "Comparable". Rather, it is listed as "Other Statutory Provisions".

The defendants cite Pennsylvania as unique in making the disability to bring suit the only sanction for non-compliance. They have submitted to the court a compilation of the sanctions imposed by other states. These include fines upon the corporation, fine or imprisonment of corporate agents, directors and officers, making void, voidable or unenforceable contracts made within the state, disability to appear or defend in state courts, denial of the benefit of statutes of limitations, holding agents, directors, officers and shareholders personally liable on contracts made within the state, and enjoining the continued doing of business within the state.

██ Despite the defendants' arguments, the court's function is to interpret legislation, not to determine its wisdom and rewrite it. If the Pennsylvania statute is unwise or ineffective, that is a matter for the Pennsylvania legislature to remedy. The object of all interpretation and construction of statutes is to

ascertain and effectuate the intention of the General Assembly.[3] When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.[4]

Section 1928(b) of the "Statutory Construction Act of 1972", Act No. 290, December 6, 1972, provides:

"All provisions of a statute of the classes hereafter enumerated shall be strictly construed:

(1) Penal provisions.

.    .    .    .    .    .

(7) Provisions decreasing the jurisdiction of a court of record.

.   .   ."

The defendants themselves assert that Section 1014 of the Pennsylvania BCL is a penal provision, and undoubtedly it decreases the jurisdiction of courts. Therefore, we must strictly construe its provisions. We cannot expand it in the hope of effectuating its underlying purpose.

Unquestionably, if the court were interpreting a penal statute providing for imprisonment of one to two years, the court could not impose a five year sentence on the basis that the penal provision was demonstratively ineffective in deterring crime. Words and phrases must be construed according to the rules of grammar and according to their common and approved usage.[5] Words cannot like chameleons change their colors to serve an immediate purpose.

The defendants' argument that to allow subsequent compliance to cure prior non-compliance would remove the only incentive for foreign corporations to comply is not entirely sound. The various tax laws affecting corporations themselves contain penalty provisions. See, e. g., 72 Purdon's Pa.Stat. § 3420n–11(b), which provides penalties for failure to report or pay corporate net income taxes. A foreign corporation that continues to operate in Pennsylvania without reporting its tax obligations risks paying interest and penalties later, and if it does report its tax obligations, the foreign corporation's presence in the state will be known to state officials. In the instant case, by qualifying, the Pennsylvania tax authorities have been informed of plaintiff's presence here.

The generally stated purposes of corporate registration statutes are to facilitate the enforcement of tax laws and to subject foreign corporations to legal process. Obviously, the more effective the registration statute is in inducing compliance, the better those purposes will be accomplished. However, neither of these goals depend entirely on the effectiveness of Section 1014. Pennsylvania has made other provisions which enable residents to bring suit against an unregistered foreign corporation. See 42 Purdon's Pa.Stat. § 8302. And, as we have said, the tax laws provide their own penalties for non-compliance.

■ In the light of all these considerations, we conclude that since the plaintiff is now registered to do business in Pennsylvania, it is permitted to maintain this action. The motions for summary judgment will be denied. We must remember the Pennsylvania statute does not invalidate contracts made by an unqualified foreign corporation. Nor does it provide that no suit shall be *commenced* by such corporation. If the legislature had intended such results, it would have been easy for it to have said so, but it did not.

In the light of this disposition of the case, it is unnecessary to consider problems of unjust enrichment posed by refusal to allow plaintiff to proceed for recovery of any money due it for the work performed prior to qualification.

3. Section 1921(a) of "Statutory Construction Act of 1972", Act No. 290, December 6, 1972.

4. *Id*, Section 1921(b).

5. Id, § 1903.