A Guy Named Moe, LLC, t/a Moe's Southwest Grill v. Chipotle Mexican Grill of Colorado, LLC et al., No. 56, Sept. Term, 2015 Opinion by Battaglia, J.

**CORPORATIONS AND ASSOCIATIONS - POWER TO SUE - STATUTE OF LIMITATIONS**

A foreign limited liability company that files a judicial review action, although it forfeited its right to do business prior to bringing the action, may nevertheless cure the infirmity and "maintain" the action.

**REAL PROPERTY LAW - ZONING - JUDICIAL REVIEW - STANDING - SPECIAL AGGRIEVEMENT - PROTESTANT LACKS PROXIMITY**

When a protestant lacks proximity to the rezoned property, claims of harm, including a change in the character of the neighborhood and increase in traffic, and limited visibility, are not sufficient to show special aggrievement.

Circuit Court for Anne Arundel County,
Maryland
Case No. C-13-178391
Argued: February 5, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 56
September Term, 2015

A GUY NAMED MOE, LLC, T/A MOE'S
SOUTHWEST GRILL

v.

CHIPOTLE MEXICAN GRILL OF
COLORADO, LLC ET AL.

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Wilner, Alan M.
(Retired, Specially
Assigned),
JJ.

Opinion by Battaglia, J.

Filed: April 26, 2016

*Battaglia, J., now retired, participated in the
hearing and conference of this case while an
active member of this Court; after being
recalled pursuant to the Constitution, Article IV,
Section 3A, she also participated in the decision
and adoption of this opinion.

In this case we are asked to determine whether A Guy Named Moe, LLC, the Petitioner, a foreign limited liability company doing business in Maryland, having filed a civil action in the Circuit Court for Anne Arundel County, although not registered to do business in Maryland, can continue to pursue its claims, once Chipotle Mexican Grill of Colorado, LLC, the Respondent, moved to dismiss the case because of Moe's failure to register.[1] Because we shall hold Moe can maintain its suit, we also address whether Moe has standing as a "person aggrieved" by the decision of the Board of Appeals of the City of Annapolis to approve Chipotle's application for a special exception and shall hold it does not.

The parties to this case are two foreign limited liability companies:[2] A Guy Named Moe, LLC ("Moe") and Chipotle Mexican Grill of Colorado, LLC ("Chipotle"). Both companies operate a chain of restaurants, which are respectively known as "Moe's Southwest Grill" and "Chipotle Mexican Grill." The dispute between the parties, which underlies this appeal, began in 2012, when Chipotle applied for a "special exception"[3] to

---

[1] The question posed in the Petition for Certiorari states:

> Did the Court of Special Appeals err when it determined that a foreign limited liability, that had previously and correctly registered to do business in Maryland, but whose registration lapsed or was forfeit, is absolutely and incurably barred from maintaining a lawsuit in the State of Maryland that is filed during such lapse?

[2] "Foreign limited liability company" refers to "a limited liability company formed under the laws of a state other than this State." Md. Code Ann., (1975, 2007 Repl. Vol., 2012 Supp.), Corporations and Associations Article § 4A–101(j).

[3] In *People's Counsel for Baltimore Cty. v. Loyola Coll. in Maryland*, 406 Md. 54, 71-72, 956 A.2d 166, 176 (2008) we explained that a special exception use allows administrative boards to permit certain land uses on a case by case basis:

(continued . . . )

build a restaurant at 36 Market Space in Annapolis, Maryland, which is approximately

425 feet from Moe's Southwest Grill at 122 Dock Street. The Department of Planning and

Zoning for the City of Annapolis recommended that the City's Board of Appeals approve

Chipotle's application, but Moe opposed that recommendation during Board proceedings.

The Board, though, unanimously approved Chipotle's request in the Spring of 2013.

---

( . . . continued)

> The special exception adds flexibility to a comprehensive legislative zoning scheme by serving as a "middle ground" between permitted uses and prohibited uses in a particular zone. Permitted and prohibited uses serve as binary, polar opposites in a zoning scheme. A permitted use in a given zone is permitted as of right within the zone, without regard to any potential or actual adverse effect that the use will have on neighboring properties. A special exception, by contrast, is merely deemed *prima facie* compatible in a given zone. The special exception requires a case-by-case evaluation by an administrative zoning body or officer according to legislatively-defined standards. That case-by-case evaluation is what enables special exception uses to achieve some flexibility in an otherwise semi-rigid comprehensive legislative zoning scheme.

Chapter 21.26.010 of the Annapolis City Code provides:

> A special exception may be granted for a use that the Zoning Code specifically authorizes in a zoning district as being allowed by special exception. In general, special exception uses may be compatible with the purposes of the zoning district in which they are to be located, but may have the potential to result in adverse impacts upon the immediate neighborhood. The process for review of special exception applications is designed to address such adverse impacts and minimize them where possible. A special exception requires a careful review of its location, design, configuration and special impact to determine, against specific standards, the desirability of permitting its establishment on a particular site.

Moe subsequently filed a petition for judicial review, pursuant to Maryland Rule 7-201 *et seq.*,[4] asking that the Circuit Court for Anne Arundel County review the Board's decision. Chipotle then filed a Motion to Dismiss in which it argued that Moe was unable to file a petition for judicial review because its right to do business had been forfeited,[5] and, thus, could not "maintain" suit under Section 4A-1007(a) of the Corporations and Associations Article of the Maryland Code (1975, 2007 Repl. Vol.).[6] Chipotle also

----

[4] Rule 7-201(a) provides that, "The rules in this Chapter govern actions for judicial review of (1) an order or action of an administrative agency". The time for filing such petition is provided by Rule 7–203(a), which provides:

> (a) *Generally*. Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:
>> (1) the date of the order or action of which review is sought;
>> (2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or
>> (3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner.

Md. Rule 7-201(a) (2012).

[5] A "Certificate of Status" issued by the State Department of Assessments and Taxation, which was attached to Chipotle's Motion to Dismiss, indicated that Moe was not in good standing because it had its right to do business forfeited by the State Department of Assessments and Taxation on November 16, 2006.

> Under Section 4A-1013 of the Corporations and Associations Article, the State Department of Assessments and Taxation "may forfeit the right of any foreign limited liability company to do business in this State if the limited liability company fails to file with the Department any report or fails to pay any late filing penalties required by law". Upon forfeiture, "the foreign limited liability company is subject to the same rules, legal provisions, and sanctions as if it had never qualified or been licensed to do business in this State." *Id.* Section 4A-1002(a), in turn, states that, "Before doing any interstate, intrastate, or foreign business in this State, a foreign limited liability company shall register with the Department."

[6] Section 4A-1007(a) of the Corporations and Associations Article provides that a foreign limited liability company may not maintain suit without complying with the requirements of the Foreign Limited Liability Company subtitle:

(continued . . . )

argued that Moe did not have standing to pursue a petition for judicial review of the Board's decision because it was not a "taxpayer" and was not "a person aggrieved" under Section 4–401(a) of the Land Use Article, Maryland Code (2012).[7]

Moe, in response, filed an Amended Petition for Judicial Review and attached a "Certificate of Good Standing" issued by the State Department of Assessments and Taxation on September 24, 2013. Moe argued that, while it was not registered to do business in Maryland when it had filed its petition, it could still "maintain" the action under Section 4A-1007 of the Corporations and Associations Article because it had

---

( . . . continued)

> (a) If a foreign limited liability company is doing or has done any intrastate, interstate, or foreign business in this State without complying with the requirements of this subtitle, the foreign limited liability company and any person claiming under it may not maintain suit in any court of this State, unless the limited liability company shows to the satisfaction of the court that:
> (1) The foreign limited liability company or the person claiming under it has paid the penalty specified in subsection (d)(1) of this section; and
> (2)(i) The foreign limited liability company or a successor to it has complied with the requirements of this title; or
> (ii) The foreign limited liability company and any foreign limited liability company successor to it are no longer doing intrastate, interstate, or foreign business in this State.

Md. Code Ann. (1975, 2007 Repl. Vol.), Section 4A-1007 of the Corporations and Associations Article.

[7] Section 4–401(a) of the Land Use Article, Maryland Code (2012) provides:

> (a) Any of the following persons may file a request for judicial review of a decision of a board of appeals or a zoning action of a legislative body by the circuit court of the county:
> > (1) a person aggrieved by the decision or action;
> > (2) a taxpayer; or
> > (3) an officer or unit of the local jurisdiction.

subsequently successfully registered and paid the associated penalty. Moe also argued that it did have standing, both as a taxpayer and as a person aggrieved.

The Circuit Court, after a hearing, dismissed Moe's petition, reasoning that a foreign limited liability company could maintain an action as long as it "c[a]me back and renew[ed]" its right to do business, but found that Moe lacked standing to petition for judicial review because it was not a taxpayer and the petition was brought "simply [as] a matter of competition":

> [THE COURT]: The fact is that in this case, your client does not have standing. Your client is not a taxpayer within the meaning of the statute and therefore on that basis alone the Court must grant the motion.
> You stand in the front of either one of these properties and look at the other, you will never have a direct view of it, and I don't even have to get into all of those issues that you have raised, all the other issues. The fact is they are not a taxpayer and therefore cannot maintain this action.
> I do believe, however, I believe if a limited corporation does file and hasn't paid their taxes or whatever, if they come back and renew it, I believe that would restore their right to maintain the action. But in this case, it simply appears to this Court it is simply a matter of competition.
> It is an argument that is not the subject for which the Court could grant on the basis of competition. So therefore the Court is going to grant the motion to dismiss the case with prejudice. I will sign an order to that effect.

Moe appealed to the Court of Special Appeals, conceding that it was not a "taxpayer," under Section 4-401(a) of the Land Use Article, but arguing that it still had standing to file such an action as "a person aggrieved" by the Board's decision under the very same statutory provision.[8]

---

[8] The two questions presented in Moe's Brief to the Court of Special Appeals were:

(continued . . . )

In a reported opinion, *A Guy Named Moe, LLC v. Chipotle Mexican Grill of Colorado, LLC*, 223 Md. App. 240, 242, 115 A.3d 733, 734 (2015), the Court of Special Appeals affirmed the Circuit Court but disagreed with the lower court on the seminal issue of whether Moe could maintain its suit. Our intermediate appellate court concluded that, "the petition at issue was void *ab initio*, given that, at the time that it was filed, Moe's had lost its right to do business in Maryland and was nonetheless continuing to do business in Maryland." *Id.* at 246, 115 A.3d at 736. The court reasoned that Moe's right to do business in Maryland was forfeited when it had filed its initial petition for judicial review and had not been restored until over four months after the 30–day filing period had lapsed. *Id.* at 244, 115 A.3d at 735. Thus, according to the court, Moe could not proceed with its action because "it did not meet Rule 7–203(a)'s 30–day deadline, as it had no right to 'maintain suit' under C.A. § 4A–1007(a) during the entire 30–day period and, when it re-attained that right, the thirty-day period had long since lapsed." *Id.* at 254, 115 A.3d at 741. The court opined that, "the plain language of the statute allows a foreign LLC to 'cure the infirmity' of forfeiture so that it may 'maintain suit,'" but that even after satisfying the court of its right to maintain suit it could not "rely on a petition it had filed with the court when it had no such right to do so". *Id.* at 248, 115 A.3d at 738.

---

( . . . continued)

1. Did the Circuit Court err when it concluded Appellant A Guy Named Moe, LLC lacked standing solely on the basis of the fact it did not pay property taxes as an owner of real property?

2. Is the Circuit Court required to make factual findings as to alleged aggrievement before dismissing an appeal of a zoning board decision for lack of standing?

The Court of Special Appeals determined that "there are no Maryland appellate decisions that address the issue of a foreign LLC's standing to bring or maintain a legal action under the circumstances presented by this case". *Id.* at 249, 115 A.3d at 738. The court, nonetheless, relied on *Price v. Upper Chesapeake Health Ventures*, 192 Md. App. 695, 995 A.2d 1054 (2010), which dealt with a domestic limited liability company's ability to file and maintain suit after forfeiture:

> In *Price*, members of a domestic LLC filed a derivative suit against members of the LLC's management committee, who had decided to sell substantially all of its assets, as well as against those members of the LLC who had ratified that sale. But the suit was brought nearly a year after the domestic LLC's right to do business had been forfeited. While noting that C.A. § 4A–920 does provide that "[t]he forfeiture of the right to do business in Maryland and the right to the use of the name of the limited liability company does not . . . prevent the limited liability company from *defending* any action, suit, or proceeding in a court of this State," we stressed that "[t]he negative implication of such language, and the sweep of the 'doing business' and name 'using' prohibition is that the company may not *file or maintain* a lawsuit after its rights have been forfeited." That reasoning and, more specifically, that "negative implication" is applicable to foreign LLCs, like Moe's, as well. Like C.A. § 4A–920, the statute governing domestic LLCs, C.A. § 4A–1007(b), the statute governing foreign LLCs, provides: "The failure of a foreign limited liability company to register in this State does not impair the validity of a contract or act of the foreign limited liability company or prevent the foreign limited liability company from *defending* any action, suit, or proceeding in a court of this State." Then, significantly, the foreign LLC subtitle goes one step further and includes a statutory provision, C.A. § 4A–1007(a), that expressly bars a foreign LLC from maintaining suit when it is doing business in Maryland without a right to do so. Thus the reasoning in *Price* clearly applies to the instant case: If a domestic LLC cannot, by "negative implication," file or maintain suit, then surely a foreign LLC containing an express bar to such legal action cannot file or maintain suit, or its legal equivalent, a petition for judicial review.

*Id.* at 249-50, 115 A.3d at 738-39 (citations omitted) (emphasis in original). The court concluded that, "a foreign LLC, like Moe's, that had its right to do business in Maryland

7

forfeited but nonetheless continued to do business in this State, in violation of Maryland law, cannot maintain a suit in Maryland. And, if it files a petition for judicial review during that time, that action is void *ab initio*." *Id.* at 253-54, 115 A.3d at 741.

The court also found helpful "cases involving the legal effects of the loss of a corporate charter, by forfeiture, upon a corporation." The Court of Special Appeals concluded that "neither a corporation nor, by implication, an LLC like Moe's may revive a suit that, though timely filed, was initiated by such an entity, after it had lost the right to do business in Maryland and yet persisted in doing business in this State." *Id.* at 253, 115 A.3d at 741. The court reasoned that since a domestic limited liability company or corporation, under Maryland law, could not revive a suit filed after forfeiture, then neither could a foreign limited liability company. *Id.*

The Court of Special Appeals also addressed whether Moe was a "person aggrieved" by the Board's decision to grant Chipotle's special exception. Our intermediate appellate court declared that, "the circuit court, in effect, appeared to make a finding as to whether Moe's qualified as 'a person aggrieved' when it opined, in its oral decision, that Moe's action against Chipotle was brought simply as a 'matter of competition.'" *Id.* at 254, 115 A.3d at 742. The court concluded that, "a person is not 'aggrieved' for standing purposes when his sole interest in challenging a zoning decision is to stave off competition with his established business." *Id.*, quoting *Superior Outdoor Signs, Inc. v. Eller Media Co.*, 150 Md. App. 479, 500, 822 A.2d 478, 478 (2003).

We shall affirm, but we disagree with the Court of Special Appeals in its holding that a foreign limited liability company cannot file a petition for judicial review and

8

subsequently "cure" a forfeiture of its registration to do business in Maryland that occurred prior to the filing of its action; we agree with the intermediate appellate court's decision, however, because Moe was not aggrieved for standing purposes.

It is undisputed that prior to filing suit, Moe's right to do business in Maryland was forfeited by the State Department of Assessments and Taxation pursuant to Section 4A-1013(a) of the Corporations and Associations Article, Maryland Code (1975, 2007 Repl. Vol.):

> The Department may forfeit the right of any foreign limited liability company to do business in this State if the limited liability company fails to file with the Department any report or fails to pay any late filing penalties required by law.

Upon forfeiture of the right to do business a foreign limited liability company is treated as if it never registered:

> On forfeiture of its right to do business in this State, the foreign limited liability company is subject to the same rules, legal provisions, and sanctions as if it had never qualified or been licensed to do business in this State.

Maryland Code (1975, 2007 Repl. Vol.), Section 4A-1013(d) of the Corporations and Associations Article.

Under Section 4A-1009(a)(1) of the Corporations and Associations Article Maryland Code (1975, 2007 Repl. Vol.), "doing business," however, does not include "maintaining suit":

> In addition to any other activities which may not constitute doing business in this State, for the purposes of this title, the following activities of a foreign limited liability company do not constitute doing business in this State: (1) Maintaining, defending, or settling an action, suit, claim, dispute, or administrative or arbitration proceeding[.]

9

"Unless the [foreign] limited liability company shows to the satisfaction of the court" that

it has paid a penalty for noncompliance and complied with the registration requirements,

it cannot "maintain" suit, however:

> If a foreign limited liability company is doing or has done any intrastate, interstate, or foreign business in this State without complying with the requirements of this subtitle, the foreign limited liability company and any person claiming under it may not maintain suit in any court of this State, unless the limited liability company shows to the satisfaction of the court that: (1) The foreign limited liability company or the person claiming under it has paid the penalty specified in subsection (d)(1) of this section;[9] and (2)(i) The foreign limited liability company or a successor to it has complied with the requirements of this title; or (ii) The foreign limited liability company and any foreign limited liability company successor to it are no longer doing intrastate, interstate, or foreign business in this State.

Maryland Code (1975, 2007 Repl. Vol.), Section 4A-1007(a) of the Corporations and

Associations Article.

The issue, thus, is queued up: If a foreign limited liability company had filed a

judicial review action after it had forfeited its right to do business, could it then

"maintain" the suit, after it cured the infirmity? The Circuit Court answered in the

affirmative; the Court of Special Appeals determined that the suit was void *ab initio*.

---

[9] Section 4A-1007(d)(1) of the Corporations and Associations Article, Maryland Code (1975, 2007 Repl. Vol.) provides that, "If a foreign limited liability company does any intrastate, interstate, or foreign business in this State without registering, the Department shall impose a penalty of $200 on the limited liability company." Section 4A-1007(d)(2) further provides that:

> Each member of a foreign limited liability company that does intrastate, interstate, or foreign business in this State without registering, and each agent of the foreign limited liability company who transacts intrastate, interstate, or foreign business in this State for it is guilty of a misdemeanor and on conviction is subject to a fine of not more than $1,000.

Moe argues that the prohibition on *maintaining* suit does not prohibit it from *filing* suit and that its subsequent registration efforts would allow the suit to continue. Moe asserts that, not only is such an interpretation of "maintain" warranted by a plain meaning interpretation, but also that we concluded as much in *Kendrick & Roberts v. Warren Bros. Co.*, 110 Md. 47, 72 A. 461, 463 (1909). Chipotle argues that the prohibition on "maintaining" suit includes a prohibition on commencing suit.

The statute does not answer the question, but embraces an ambiguity that has permitted the two varying interpretations developed by the Circuit Court and our intermediate appellate court. Section 4A-1007(a) of the Corporations and Associations Article admonishes that a foreign limited liability company "may not maintain suit in any court of this State" if it is noncompliant, but this prohibition is subject to the proviso, "[u]nless the [foreign] limited liability company shows to the satisfaction of the court" that it has paid a penalty for noncompliance and complied with the registration requirements.

"Maintain," used in Section 4A-1007(a), means "to continue" something already in existence, Black's Law Dictionary 1097 (10th ed. 2014), and coupled with "unless the limited liability company shows to the satisfaction of the court," indicates that the Legislature intended to permit a noncompliant foreign limited liability to "cure" its failure to comply with registration requirements, even though having failed to register before filing suit. The history of Section 4A-1007(a) after our decision in *Kendrick*, 110 Md. at 47, 72 A. at 461, and the *Kendrick* case itself, as well as out of state cases

11

interpreting the words "maintain" and "unless" or "until" in similar statutes support this analysis.

In *Kendrick* we analyzed an iteration of our foreign corporation statute, enacted in Section 109(d) of Chapter 270 of the Maryland Laws of 1898 and codified in Section 140 of Article 23 of the Code of Public General Laws of 1904, which stated that, "No such foreign corporation shall be permitted to maintain any action, either at law or equity, in the courts of this state, until the provisions of this Act shall have been complied with". 110 Md. at 70, 72 A. at 464. In the case, Kendrick & Roberts Inc., a West Virginia corporation, had sued Warren Bros. Co., which in response stated that, "at the time of the institution of this suit in this Court the said foreign corporation had not filed in the office of the Secretary of the State of Maryland". *Id.* at 67, 72 A. at 462. Kendrick & Roberts Inc. alleged, thereafter "by way of replication," that two months after filing suit, "the plaintiff fully complied with all the requirements of the law of the state of Maryland relating to foreign corporations". *Id.* at 68, 72 A. at 463. The trial court allowed the action to proceed, and Kendrick & Roberts Inc. prevailed.

We affirmed and held that, "The statute does not forbid the institution or bringing of the action, but prevents the maintaining of such action until the provisions of the law shall have been complied with." *Id.* at 72, 72 A. at 464. We recognized that, "The meaning of the word 'maintain' has been defined 'in pleading, to support what has already been brought into existence.'" *Id.* We concluded that, "omission on the part of the plaintiff does not operate to end a suit otherwise regularly instituted, or to destroy a right in other respects validly existing, and the greatest effect . . . would be to suspend the

12

prosecution of such suit until compliance was had with statute." *Id.*, quoting *Wetzel & T. Ry. Co. v. Tennis Bros. Co.*, 145 F. 458, 464 (4th Cir. 1906).

The subsequent history of Section 140 of Article 23 reveals that the Legislature retained the "maintain" language in every iteration of the foreign corporation statute to permit a noncompliant foreign corporation to come into compliance.[10] The statute has been amended on several occasions since it was interpreted in *Kendrick*, and the General Assembly has not changed the statute so as to modify the *Kendrick* interpretation. It is then presumed that the Legislature has acquiesced in the interpretation given in *Kendrick*. *Forbes v. State*, 324 Md. 335, 342, 597 A.2d 427, 431 (1991). While the word "until" was replaced with "unless" during the enactment of the Corporations and Associations

---

[10] The statute was amended by the enactment of Section 69 of Chapter 240 of the Maryland Laws of 1908 to state that: "failure shall not affect the validity of any contract made with such non-complying corporation, but no suit shall be maintained in any of the courts of this state, by any such corporation until it has complied with the requirements of this article.". A new corporation statute was enacted in 1937 in Chapter 504 of the Maryland Laws. The preamble to Chapter 504 of the Maryland Laws of 1937, entitled "AN ACT to alter and amend the laws relating to corporations, associations and joint stock companies" states that, "the provisions of this Act, so far as they are substantially the same as existing statutes, shall be construed as continuations thereof, and as intended to make no substantive change in existing laws, except in so far as such change shall clearly manifest". Again a new corporation statute was enacted by Chapter 135 of the Maryland Laws of 1951, which was a complete revision of Sections 1-135 of Article 23 of the Maryland Code (1939). The Commission tasked with revising Maryland's corporate laws, stated that "provisions of [the foreign corporations] subtitle are substantially the same as the present Sections 117 to 122, inclusive, of Article 23." Final Report of the Commission on Revision of the General Corporation Laws of Maryland December 1, 1950 at 86. By Chapter 311 of the Maryland Laws of 1975, provisions in Article 23, including the prohibition on maintaining suit, were recodified into the modern Corporations and Associations Article, and the language enacted in 1975 remains that which exists today in Section 7-301 of the Corporations and Associations Article. Section 7-301 is in all respects identical to Section 4A-1007(a) of the Corporations and Associations Article.

13

Article by Chapter 311 of the Maryland Laws of 1975, the revisers indicated that "no substantive changes [we]re made" by the amendment. Governor's Commission to Revise the Annotated Code, Commission Report No. 1975-2: Revised Article on Corporations and Associations [S.B. 330] 47 (1975) ("Subtitle 3 [of Title 7--Foreign Corporations] is composed of five sections relating to sanctions and penalties; no substantive changes are made.").

Both the foreign corporation statute and the statute governing foreign limited liability companies embody identical "may not maintain suit" language that we interpreted in *Kendrick*. Maryland Code (1975, 2007 Repl. Vol.), Sections 4A-1007(a) and 7-301 of the Corporations and Associations Article. Foreign limited liability companies and foreign corporations also suffer identical consequences upon failure "to file with the Department any report or fail[ure] to pay any late filing penalties required by law" such that the Department of Assessments and Taxation may forfeit the entities's right "to do business in this State". Maryland Code (1975, 2007 Repl. Vol.), Sections 4A-1013(a) and 7-304(a) of the Corporations and Associations Article. Upon forfeiture of the right to do business, a foreign limited liability company and a foreign corporation are "subject to the same rules, legal provisions, and sanctions as if [they] had never qualified or been licensed to do business in this State." Maryland Code (1975, 2007 Repl. Vol.), Sections 4A-1013(d) and 7-304(d) of the Corporations and Associations Article.

Our analysis that a foreign limited liability company may cure the infirmity of failure to register from the time of filing suit also finds support in our sister jurisdictions interpreting the words "maintain" and "unless" or "until" in statutes similar to ours.

14

In *Nolte v. MT Tech. Enterprises, LLC*, 726 S.E.2d 339, 345 (Va. 2012), MT filed suit when it was not registered to transact business in Virginia. Under the Virginia Code § 13.1-1057(A) "[a] foreign limited liability company transacting business in the Commonwealth may not *maintain* any action, suit, or proceeding in any court of the Commonwealth until it has registered in the Commonwealth."[11] *Id.* (emphasis in original). While MT was not registered when it initiated suit, it registered "before the trial court entered its final order" granting judgment in its favor. *Id.*

The Supreme Court of Virginia affirmed and concluded that MT could maintain its suit after registering. The court interpreted the statutory language in Virginia Code § 13.1-1057(A) of "maintain" as "'to continue (something),' not to start or commence." *Id.*, quoting Black's Law Dictionary 1039 (9th ed. 2009). The court also relied on its prior interpretation of a similar statute applicable to foreign corporations where the court had determined that, "[i]t is *not the right to begin the action, but the right to maintain it*, that is withheld for failure to comply with its terms. It takes no right away from the offending party after compliance. When its terms are met, the barriers theretofore existing are removed." *Id.* (emphasis in original), quoting *Phlegar v. Virginia Foods, Inc.*, 51 S.E.2d 227, 230 (Va. 1949). The court reasoned that, "[t]he statute at issue in *Phlegar* contained language similar to the language in Code § 13.1–1057(A)" and that the foreign corporation statute at issue in *Phlegar* stated in relevant part that,

---

[11] Virginia's provisions for registration of a foreign limited liability company and for forfeiture of the right to do business for failure to make certain annual filings are similar to the provisions in Maryland law. Virginia Code §§ 13.1-1052, 13.1-1056.1 and 13.1-1056.2.

15

"'no action shall be *maintained* in any of the courts in this State by any such person, firm or corporation . . . until the certificate required by this act has been filed.'" *Id.* (emphasis in original).

A similar result was reached by the Delaware Supreme Court in interpreting its foreign corporation statute.[12] In *Hudson Farms, Inc. v. McGrellis*, 620 A.2d 215, 216 (Del. 1993), Hudson Farms Inc., a Pennsylvania corporation, filed a mechanic's lien against John McGrellis in Delaware at a time when Hudson Farms was not licensed to do business there. McGrellis filed a motion for summary judgment asserting that Hudson Farms was a foreign corporation not licensed to do business in Delaware, and was, therefore, barred from initiating the action. The trial court determined that Hudson Farms was not licensed at the time it filed the action and dismissed the action without prejudice, although, "the practical effect of the [trial court's] ruling was to defeat Hudson Farms' cause of action because the period for filing a mechanic's lien had expired." *Id.* at 217. Hudson Farms, in a motion for reargument, asserted that, between McGrellis's filing of the motion for summary judgment and the date of the hearing on the motion, it had

---

[12] Delaware's foreign corporation statutes are similar to Maryland's provisions for foreign limited liability companies in its registration requirements and forfeiture provisions for failure to file annual reports. *8 Del. C.* §§ 371 and 375.

It appears that the Delaware courts have not interpreted similar provisions applicable to foreign limited liability companies, *6 Del. C.* §§ 18-901 *et seq.* The limited liability company provisions are similar to the ones applicable to foreign corporations in the use of the "maintain" and "until" language: "A foreign limited liability company doing business in the State of Delaware may not maintain any action, suit or proceeding in the State of Delaware until it has registered in the State of Delaware, and has paid to the State of Delaware all fees and penalties for the years or parts thereof, during which it did business in the State of Delaware without having registered." *6 Del. C.* § 18-907(a).

properly registered to do business in Delaware. The trial court denied reargument, "ruling, in effect, the Hudson Farms registration efforts were unavailing since its non-registered status at the time of filing suit was an uncorrectable defect." *Id.*

The Supreme Court of Delaware reversed. The court interpreted *8 Del. C.* § 383:

> (a) A foreign corporation which is required to comply with §§ 371 and 372 of this title and which has done business in this State without authority *shall not maintain any action or special proceeding in this State unless and until such corporation has been authorized to do business in this State* and has paid to the State all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this State without authority. This prohibition shall not apply to any successor in interest of such foreign corporation.

*Id.* at 216 n.3 (emphasis in original), and stated that, "The great majority of courts which have construed such statutes have concluded that a court may stay a suit commenced by a non-qualified foreign corporation until the foreign corporation obtains the requisite authority." *Id.* at 218. The Delaware court recognized that in states with similar statutes, "Courts which have considered the "maintaining" language of foreign corporation statutes appear to have adopted a liberal stance in construing the term" and "allowed a non-qualified foreign corporation to file suit and thereafter obtain the required authorization." *Id.* at 220, citing *Oxford Paper Co. v. S. M. Liquidation Co.,* 45 Misc. 2d 612, 257 N.Y.S.2d 395 (Sup. Ct. N.Y. 1965). The court concluded that, "The majority of courts would permit a non-qualified foreign corporation to achieve registration during the pendency of the proceeding, notwithstanding the lack of such status when the litigation was commenced and regardless of whether the applicable registration statute contains the term 'unless' or 'unless and until.'" *Id.* at 221.

17

The court determined that Delaware's statute as well as those in other states was similar to Section 117 of the Model Business Corporation Act (1960), which stated, in part, that "[n]o foreign corporation transacting business in this State without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority."[13] *Id.* at 218. The court reasoned that, "It is not unreasonable to assume, as most courts do, that the word "until," as used in § 117, provides an inference that a proceeding may be stayed until compliance occurs." *Id.* at 218-19.[14] *See also Empire Excavating Co. v. Maret Dev. Corp.*, 370 F. Supp. 824, 826 (W.D. Pa. 1974), citing *inter alia*, *Kendrick*, 110 Md. at 47,

---

[13] The court in *Hudson Farms* explained that the Model Business Corporation Act was revised in 1984, but that Delaware's statute was adopted in 1967. *Hudson Farms, Inc. v. McGrellis*, 620 A.2d 215, 218 (Del. 1993).

[14] The Delaware court also noted that the statute related to foreign corporations had a revenue enhancing purpose in the payment of "*all fees, penalties and franchise taxes* for the years or parts thereof during which it did business" in Delaware without authority. *Hudson Farms*, 620 A.2d at 221. Our statute also has a revenue enhancing purpose. The statute requires that a penalty be paid in order to maintain suit and that the penalty be collected as a penalty under the Tax-Property Article: "(i) If a foreign limited liability company does any intrastate, interstate, or foreign business in this State without registering, the Department shall impose a penalty of $200 on the limited liability company. (ii) The penalty under this subsection shall be collected and may be reduced or abated under § 14-704 of the Tax-Property Article." Maryland Code (1975, 2007 Repl. Vol.), Section 4A-1007(d)(1) of the Corporations and Associations Article. Additionally, registration with the State Department of Assessments and Taxation helps facilitate the collection of taxes. Thus, dismissal of the action would undermine the incentive to pay the penalty and register. *See also Empire Excavating Co. v. Maret Dev. Corp.*, 370 F. Supp. 824, 827 (W.D. Pa. 1974) ("The generally stated purposes of corporate registration statutes are to facilitate the enforcement of tax laws and to subject foreign corporations to legal process. Obviously, the more effective the registration statute is in inducing compliance, the better those purposes will be accomplished.").

72 A. at 461 ("[T]he majority view among courts interpreting similar statutes in other states is that "maintain" means to continue an action already begun.").

Chipotle, however, points to various cases in which other courts have not permitted a noncompliant foreign corporation to file suit and maintain the action.[15] In

[15] Chipotle cites *Amalgamated Zinc & Lead Co. v. Bay State Zinc Mining Co.*, 120 S.W. 31, 33 (1909), in which the Supreme Court of Missouri interpreted Missouri Revised Statutes of 1899, Section 1026, which stated that, "* * * no foreign corporation as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort; * * *." *Salitan v. Carter, Ealey & Dinwiddie*, 332 S.W.2d 11, 13 (Mo. Ct. App. 1960). In 1943 the Legislature amended the statute to read: "* * * No foreign corporation, failing to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the contract or tort, *while the requirements of this Act have not been complied with.*" *Id.* at 14 (emphasis in original). Interpreting the more modern statute in *Salitan*, 332 S.W.2d at 15, the Missouri Court of Appeals determined that a foreign corporation could cure an infirmity:

> In the 1943 amendment there is no absolute prohibition of the enforcement of the contract by action in any Missouri court. Rather, there is a prohibition of such enforcement only 'while' the chapter is not complied with. To our minds this plainly means that the prohibition exists and applies only so long as the statute has not been complied with and that thereafter the bar on the maintenance of a suit or action is removed.

Chipotle also cites *Parker v. Lin-Co Producing Co.*, 197 So. 2d 228, 230 (Miss. 1967), in which the Supreme Court of Mississippi interpreted a statute that stated that, "No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state." This statutory language was later revised to conform with Maryland statutory provisions and required the opposite result thereafter as explained in *Cuba Timber Co. v. Boswell*, 339 F. Supp. 2d 773, 775-76 (S.D. Miss. 2004):

> [T]he current version of the statute is quite different from the version in effect at the time *Parker* was decided and which was considered by the court in *Parker*. Previously, the door-closing statute provided, "No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state." In sharp contrast, though, and as observed *supra*, the current version, which became effective January 1, 1988, prohibits a

(continued . . . )

19

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 563 P.2d 582, 583 (Nev. 1977), for example, the League to Save Lake Tahoe was a foreign corporation not qualified to do business in Nevada when it filed an action against Tahoe Regional Planning Agency. During the pendency of the suit, The League "qualified to do business." *Id.* The trial court, nevertheless, dismissed the action with prejudice reasoning that Nevada Revised Statute ("NRS") 80.210 which provided that, "a foreign corporation '. . . shall not be allowed to commence,[16] maintain, or defend any action or proceeding in any court of this state until it shall have fully complied with the provisions of NRS 80.010 to 80.040, inclusive'" mandated dismissal since The League had not qualified to do business when the suit was commenced. *Id.*

---

( . . . continued)
> foreign corporation transacting business in Mississippi without a certificate of authority from maintaining a proceeding in the courts of the statute only "until it obtains a certificate of authority. . . ." In light of these changes to the statute, the state court's reliance on *Parker* was not well placed and its conclusion that the door-closing statute barred the cross-claim was not well grounded.

(internal footnotes omitted).

In *P.K. Springfield, Inc. v. Hogan*, 621 N.E.2d 1253, 1256 (Ohio Ct. App. 1993), Ohio's intermediate appellate court interpreted Ohio Revised Code (O.R.C.) § 1703.29(A) which stated that, "no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license." The court determined that the word "maintain" could apply to the "beginning or the continuation of an action". *Id.* at 1258. Courts citing *Hogan* have declined to adopt a similar interpretation. *Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 478 n.2 (6th Cir. 2014) ("[T]he issue of capacity generally, and under Ohio Revised Code § 1705.58 [applicable to foreign limited liability companies] specifically, is not clear."

[16] We note that the use of the word "commence" in the Nevada statute differentiates it from statutes in other jurisdictions. Even if *League to Save Lake Tahoe* was not subsequently overruled, this difference could be dispositive.

The Supreme Court of Nevada affirmed and concluded that, "[i]nstitution of suit before compliance with filing requirements does not toll the statute of limitations, nor does later compliance operate retroactively to permit continuation of the action if the statute of limitations had run between filing of the suit and such compliance." *Id.* at 585. The court stated that "The League to Save Lake Tahoe lacked capacity to commence this action. We must decide whether the statute, NRS 80.210, allows curative efforts to revive initial lack of capacity to sue. . . . Case authority elsewhere is split and not particularly helpful since statutory language differs." *Id.* at 583-84. The court reasoned that "the word 'maintain' was meant to apply to a case commenced by a corporation which had qualified to do business here but which subsequently became unqualified because of failure to comply with continuing statutory requirements." *Id.* at 584.

*The League to Save Lake Tahoe* was expressly overruled, however, in *Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 38 P.3d 872, 873 (Nev. 2002). In the case, Executive, a foreign corporation in Nevada, had its certificate to do business revoked prior to the time it filed suit against Ticor Title in Nevada, and Ticor argued that Executive's action should be dismissed. Executive subsequently renewed its qualification, but the trial court dismissed Executive's suit with prejudice, because the statute of limitations had run. *Id.* at 874.

The Supreme Court of Nevada reversed and concluded that "NRS 80.210 is susceptible to a different construction than the construction that *League to Save Lake Tahoe* relied on." *Id.* at 875. The court reasoned that "maintain" could be interpreted to mean "carry on" or "continue" and "impl[ies] that the foreign corporation should not be

21

allowed to proceed with its action 'until it has fully complied with the' qualification requirements after its failure to comply has been discovered." *Id.* The court determined that, "The majority of states follow this more forgiving approach—rather than dismiss an action filed by an unqualified foreign corporation outright, most states with statutes similar to Nevada's simply stay the action until the corporation qualifies."[17] *Id.*

---

[17] The Nevada Court also noted that the statute "sets forth its own penalties and enforcement procedures, utilizing district attorneys and the attorney general under the governor's direction to enforce the qualification requirements—the judiciary need not impose penalties beyond those provided." *Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 38 P.3d 872, 876 (Nev. 2002). Like Nevada's statute, Maryland law provides penalties and enforcement mechanisms to ensure that a foreign limited liability company complies with qualification requirements. Section 4A-1007(d)(1) of the Corporations and Associations Article, Maryland Code (1975, 2007 Repl. Vol) provides that, "(i) If a foreign limited liability company does any intrastate, interstate, or foreign business in this State without registering, the Department shall impose a penalty of $200 on the limited liability company." A foreign limited liability company's members would also be incentivized as members and agents of a foreign limited liability company that do business without qualification are subject to a misdemeanor and fine: "Each member of a foreign limited liability company that does intrastate, interstate, or foreign business in this State without registering, and each agent . . . is guilty of a misdemeanor and on conviction is subject to a fine of not more than $1,000." Maryland Code (1975, 2007 Repl. Vol.), Section 4A-1007(d)(2) of the Corporations and Associations Article. Section 4A-1008 of the Corporations and Associations Article provides that, "The Attorney General may bring an action to restrain a foreign limited liability company from doing business in this State in violation of this title."

The Nevada Court also reasoned that, "the determination of whether a foreign corporation is actually 'doing business' in this state and therefore required to qualify involves a fact-intensive and often nebulous inquiry, and thus, the failure to qualify can be the result of a 'bona fide disagreement'". *Executive Mgmt.*, 38 P.3d at 876. Under Maryland law, whether a foreign limited liability company is "doing business" and must register may also not always be clear: "'doing business' depends upon the facts of each individual case, and rests not on a single factor, but rather on the nature and extent of the business and activities which occur in the forum state." *Tiller Const. Corp. v. Nadler*, 334 Md. 1, 16, 637 A.2d 1183, 1190 (1994).

In the case *sub judice*, we shall hold that a foreign limited liability company can "cure" its failure to comply with registration requirements and continue its suit even though not registered at the time of filing suit. What was true in *Kendrick*, 110 Md. at 47, 72 A. at 464, remains true today with respect to a foreign limited liability company: "omission on the part of the plaintiff does not operate to end a suit otherwise regularly instituted". Thus, once a foreign limited liability company comes into compliance with the statute, it may maintain its action even though not registered when initiating the suit.

Chipotle, though, argues that the result reached by our brethren on the Court of Special Appeals is more appropriate. Unlike our intermediate appellate court we, however, rely on an interpretation of "maintain" and "unless" in Section 4A-1007(a) as well as *Kendrick* and related out of state cases, while the Court of Special Appeals relied upon *Price v. Upper Chesapeake Health Ventures*, 192 Md. App. 695, 697, 995 A.2d 1054, 1055 (2010), which we find to be inapposite.

In *Price*, members of The Surgery Pavilion, LLC, a domestic limited liability company whose right to do business and use its name had been forfeited,[18] sought to bring a derivative action on behalf of the LLC after management approved the sale of substantially all of its assets. The circuit court dismissed the suit, determining that the members could not bring a derivative suit on behalf of the LLC. *Id.* at 702, 995 A.2d at 1058.

---

[18] The Surgery Pavilion's right to do business and use its name were forfeited "because the company failed to file a tangible personal property tax report for tax year 2005." *Price v. Upper Chesapeake Health Ventures*, 192 Md. App. 695, 699, 995 A.2d 1054, 1056 (2010).

The Court of Special Appeals affirmed the dismissal. The court relied primarily on two statutory sections that address a domestic limited liability company's abilities following forfeiture: Sections 4A-911(d) and 4A-920 of the Corporations and Associations Article. Section 4A-911(d) stated that, after forfeiture, a domestic limited liability company loses "the right to do business in Maryland and the right to the use of [its] name" while Section 4A-920 provided that, "forfeiture of the right to do business in Maryland and the right to the use of the name of the limited liability company under this title does not . . . prevent the limited liability company from defending any action, suit, or proceeding in a court of this State." *Id.* at 703-05, 995 A.2d at 1058-60. Interpreting the "savings clause" permitting the domestic limited liability company to defend a suit, the Court of Special Appeals rejected the notion that defending a suit includes filing an action.

Chipotle and the Court of Special Appeals relied on *Price*, obviously, because Moe, like Surgery Pavilion LLC, lost its right to do business, albeit not its name. *Price* is inapposite, however, because a foreign limited liability company is offered the opportunity after forfeiture to "maintain suit," as well as defend an action.[19] Maryland Code (1975, 2007 Repl. Vol.), Section 4A-1007 of the Corporations and Associations Article. The inclusion of the language "maintain" makes all the difference in the world as

---

[19] We recognize that the court in *Price* relied on the rule of strict construction for "savings clauses," or a "statutory provision exempting from coverage something that would otherwise be included." Black's Law Dictionary (10th ed. 2014). Generally, savings clauses are strictly construed when the statute is unclear. We, however, in *Kendrick* declared the foreign limited liability savings clause to be clear.

explained in *Kendrick*, a part of our jurisprudence not cited to the Court of Special Appeals by Moe, and bulwarked by our sister states interpreting the same language.[20]

Chipotle, however, argues that Moe's subsequent compliance with the statutory registration requirement "cannot be given retroactive effect" under Rule 7–203(a), which states:

> Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of: (1) the date of the order or action of which review is sought; (2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or (3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner.

In essence, Chipotle argues that Rule 7-203 creates a statute of limitations that was not observed when registration was "cured" outside of the thirty days.[21]

In the present case, Moe could file suit without having registered once Moe cured its infirmity during the pendency of the action. Clearly, in so holding we recognize that the thirty day dictates of Rule 7-203 have been met as a result of Moe's registration during the pendency of the suit based upon those out-of-state cases upon which we have

---

[20] Chipotle also urges us to consider Section 4A-1001(b) of the Corporations and Associations Article, which prohibits a foreign limited liability company from doing "any kind of intrastate, interstate, or foreign business in this State which the laws of this State prohibit a domestic limited liability company from doing." Chipotle argues that allowing a forfeited foreign limited liability company to file suit when a forfeited domestic limited liability company could not would be contrary to the limitation on "doing business." Chipotle's interpretation of Section 4A-1001(b) is untenable. Section 4A-1009 of the Corporations and Associations Article makes clear that "maintaining suit" is not included in the definition of "doing business." Prohibiting a foreign limited liability corporation from filing suit while not registered would also render meaningless the exception allowing it to "maintain suit" contained in Section 4A-1007(a).

[21] The affirmative defense of statute of limitations was not raised in Chipotle's answer.

25

relied; some permitted curing of registration requirement infirmities to permit maintenance of suit even when the statute of limitations had run at the time of curing.[22] *Hudson*, 620 A.2d at 217; *Executive Mgmt.*, 38 P.3d at 874.

Although we hold that Moe could file its petition for judicial review and then register in order to maintain its action, Moe was not a "person aggrieved" and thus did not have standing under Section 4-401 of the Land Use Article, Maryland Code (2012), to file a request for judicial review of the decision of the board of appeals:

> (a) Any of the following persons may file a request for judicial review of a decision of a board of appeals or a zoning action of a legislative body by the circuit court of the county: (1) a person aggrieved by the decision or action; (2) a taxpayer; or (3) an officer or unit of the local jurisdiction.

Chipotle did not raise the issue of standing before us, conceivably because the issue was decided in its favor in the Circuit Court and the Court of Special Appeals. Rather than remand to the Circuit Court to once again decide the issue of Moe's standing and then encounter further proceedings, however, we rely upon the language of Maryland Rule 8-131(a), which provides that, "Ordinarily, the appellate court will not decide any other

---

[22] Chipotle also relies on the Comment accompanying Section 902 of the Uniform Limited Liability Company Act (2006, 2013 amend.). Section 902(b) states that "A foreign limited liability company doing business in this state may not maintain an action or proceeding in this state unless it is registered to do business in this state." The comment accompanying Section 902(b) merely states that, "if a court dismisse[d] a case under this subsection rather than staying the proceedings pending the foreign LLC's registration, a statute of limitations problem may occur." The Comment cites to *Corco, Inc. v. Ledar Transp., Inc.*, 946 P.2d 1009 (Kan. App. 1997).

In *Corco*, Ledar was a foreign corporation not registered to do business in Kansas and, as a result, "[t]he trial court dismissed Ledar's counterclaim with prejudice based on Ledar's failure to register as a foreign corporation" because Ledar "never fully complied with the statute". 946 P.2d at 1009-10. In the present case, Moe cured its infirmity during the pendency of suit, so *Corco* is inapposite.

issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." *Lizzi v. Washington Metro. Area Transit Auth.*, 384 Md. 199, 206, 862 A.2d 1017, 1022 (2004) (The Court may decide an issue not raised by petition or cross-petition when the issue "was raised in and has been fully determined by the trial court."). We avoid the expense and delay of another appeal because we hold that Moe was not a "person aggrieved."

The issue of whether Moe was a person aggrieved by Chipotle's special exception was raised for the first time in the Circuit Court when Chipotle filed a Motion to Dismiss challenging Moe's standing to file a judicial review action. After a hearing on the Motion, the Circuit Court Judge dismissed the action finding Moe's arguments concerning increased traffic unavailing saying, "You stand in the front of either one of these properties and look at the other, you will never have a direct view of it . . . in this case, it is simply a matter of competition. It is an argument that is not the subject for which the Court could grant on the basis of competition. So therefore the Court is going to grant the motion to dismiss the case with prejudice."

To be a person aggrieved, "[t]he decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally." *Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 144, 230 A.2d 289, 294 (1967). "An adjoining, confronting or nearby property owner is deemed, *prima facie*, to be specially damaged and, therefore, a person aggrieved." *Id.* at

27

145, 230 A.2d at 294. "A protestant is specially aggrieved when she is farther away than an adjoining, confronting, or nearby property owner, but is still close enough to the site of the rezoning action to be considered almost *prima facie* aggrieved, and offers 'plus factors' supporting injury." *Ray v. Mayor & City Council of Baltimore*, 430 Md. 74, 85, 59 A.3d 545, 551-52 (2013). In *Ray* we succinctly summarized that proximity is the most important factor and beyond that, special aggrievement must be shown:

> A review of our cases, where standing to challenge a rezoning action was at issue, reveals one critical point: proximity is the most important factor to be considered. The relevance and import of other facts tending to show aggrievement depends on how close the affected property is to the re-zoned property. There is, however, no bright-line rule for exactly how close a property must be in order to show special aggrievement. Instead, this Court has maintained a flexible standard, finding standing in cases that do not quite satisfy the "adjoining, confronting or nearby" standard of *prima facie* aggrievement, but are nudging up against that line. Protestants in such cases will be considered to pass the standing threshold if they allege specific facts of their injury. In other words, once sufficient proximity is shown, some typical allegations of harm acquire legal significance that would otherwise be discounted. But in the absence of proximity, much more is needed. For example, an owner's lay opinion of decreasing property values and increasing traffic has been considered sufficient for special aggrievement when combined with proximity that is almost as great as in cases where properties are "adjoining, confronting or nearby." Conversely, without sufficient proximity, similar facts will only support general aggrievement. For example, when the affected properties are not sufficiently close to the site to qualify as almost *prima facie* aggrieved, claims of increasing traffic, change in the character of the neighborhood, lay opinion projecting a decrease in property values, and limited visibility have been held to show only general aggrievement.

*Id.* at 82-85, 59 A.3d at 550-52 (internal footnotes and citations omitted).

Moe lacks the sufficient proximity and "plus factors" identified in *Ray* needed to demonstrate aggrievement. The Circuit Court determined that Moe's property was not within direct view of Chipotle's. Additionally, the issue of traffic is not dispositive

28

because "there is an overwhelming weight of authority that claims of increased traffic, by protestants who lack close proximity, are insufficient to prove special aggrievement." *Ray*, 430 Md. at 96, 59 A.3d 545. The motivator driving Moe to protest the rezoning was, as found by the Circuit Court Judge, "simply a matter of competition." It is clear, however, that, "a person is not 'aggrieved' for standing purposes when his sole interest in challenging a zoning decision is to stave off competition with his established business." *Superior Outdoor Signs, Inc.*, 150 Md. App. at 500, 822 A.2d at 490, citing *Kreatchman v. Ramsburg*, 224 Md. 209, 220, 167 A.2d 345, 351 (1961). As a result we shall affirm the dismissal of Moe's judicial review action.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**