**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000409
20-OCT-2022
07:54 AM
Dkt. 68 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

RICHARD K. ADKINS and BROWN EYED GIRL, LLC, an Illinois
Limited Liability Company, Plaintiffs-Appellants,
v.
GARY R. FISCHER; SAMANTHA K. FISCHER; ANINI ALOHA
PROPERTIES, INC., a Hawaii corporation, Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; AND DOE ENTITIES 1-10, Defendants,

and

GARY R. FISCHER; SAMANTHA K. FISCHER; ANINI ALOHA
PROPERTIES, INC., a Hawaii corporation, Third-Party
Plaintiffs-Appellees,
v.
STEVEN NICKENS, CBIP, INC., dba COLDWELL BANKER ISLAND
PROPERTIES, ANY J. MARVIN and HANALEI NORTH SHORE
PROPERTIES, LTD., Third-Party Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
AND DOE ENTITIES 1-10, Third-Party Defendants

NO. CAAP-18-0000409

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 13-1-0032)

OCTOBER 20, 2022

GINOZA, C.J., AND WADSWORTH AND NAKASONE, JJ.

OPINION OF THE COURT BY WADSWORTH, J.

This appeal stems from a dispute involving the sale of real property in Hanalei, Hawaiʻi (the **Property**).  In their Complaint, Plaintiffs-Appellants Richard K. Adkins (**Adkins**) and Brown Eyed Girl, LLC (**BEG**) (collectively, **Plaintiffs**) alleged that Defendants/Third-Party Plaintiffs-Appellees Gary R. Fischer and Samantha K. Fischer (**the Fischers**) and Defendant/Third-Party Plaintiff-Appellee Anini Aloha Properties, Inc. (**Anini Aloha**) (collectively, **Defendants**) failed to disclose material facts about the Property when they sold it to Adkins.  Adkins then conveyed the Property to BEG, a limited liability company (**LLC**) whose sole member was Adkins.  After Plaintiffs filed their Complaint, Defendants filed a Third-Party Complaint for indemnification and contribution against Third-Party Defendants-Appellees Steven Nickens (**Nickens**), CBIP, Inc., dba Coldwell Banker Island Properties (**CBIP**), Amy J. Marvin (**Marvin**), and Hanalei North Shore Properties, Ltd. (**HNSP**) (collectively, **Third-Party Defendants**).

Defendants moved to dismiss Plaintiffs' Complaint on the grounds that:  (1) BEG lacked capacity to commence and maintain the lawsuit, because BEG did not have a certificate of authority to transact business in Hawaiʻi pursuant to HRS chapter § 428-1008 (2004); and (2) Adkins was not a real party in interest, because after conveying the Property to BEG, Adkins had no interest in the Property.  CBIP, Nickens, and HNSP joined the motion.  The Circuit Court of the Fifth Circuit (**Circuit Court**) agreed with Defendants' arguments and granted the motion to dismiss with prejudice as to Defendants and as to CBIP, Nickens, and HNSP.[1]

Plaintiffs appeal from the May 8, 2018 "Final Judgment" (**Judgment**), which dismissed Plaintiffs' Complaint with prejudice as to <u>all</u> Defendants and Third-Party Defendants, entered by the Circuit Court pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**)

---

[1]    The Honorable Kathleen N.A. Watanabe presided.

Rule 54(b).[2/]  Plaintiffs also challenge the Circuit Court's June 19, 2017 "Order Granting (1) Defendants['] . . . Motion to Dismiss Under HRCP Rule 17, Filed on September 29, 2016 [(**Motion to Dismiss**)]; (2) . . . CBIP[ and] Nickens' Substantive Joinder in . . . Motion to Dismiss . . . Filed on October 18, 2016; and (3) [HNSP's] Joinder and Memorandum in Support of . . . Motion to Dismiss . . . Filed on October 21, 2016" (**Dismissal Order**).

On appeal, Plaintiffs contend that the Circuit Court erred in: (1) granting the Motion to Dismiss in violation of HRCP Rule 17(a); (2) granting the Motion to Dismiss pursuant to HRS § 428-1008, where BEG obtained a certificate of authority before the Complaint was dismissed; and (3) finding that Adkins was not a real party in interest.

We hold that the Circuit Court did not violate HRCP Rule 17(a) in dismissing BEG's claims against Defendants.  HRCP Rule 17(a) allows a real party in interest to ratify the commencement of an action that has not been brought in the name of the party who has the right sought to be enforced.  Here, BEG's claims were not dismissed on the basis that it was not a real party in interest; rather, its claims were dismissed because it did not have a certificate of authority when the Complaint was filed, and thus lacked capacity to sue Defendants.  In these circumstances, Plaintiffs could not use ratification under HRCP Rule 17(a) to remedy BEG's lack of capacity to sue.

Additionally, we hold that the Circuit Court did not err in dismissing BEG's claims pursuant to HRS § 428-1008(a).  We construe that statute to mean that a foreign LLC transacting business in Hawaiʻi may not commence or continue an action or proceeding in the state except when the LLC has a certificate of authority.  Further, HRS § 428-1008(a) does not provide an

---

[2/]     We note that Plaintiffs' Complaint did not name Nickens, CBIP, HNSP, and Marvin as defendants.  During a May 17, 2017 hearing on the motion to dismiss, the Circuit Court orally expressed an intent to dismiss the Defendants' Third-Party Complaint (see infra); however, the Judgment failed to do so.  It thus appears that the Third-Party Complaint remains pending before the Circuit Court.  See Order Den. Nov. 7, 2018 Mot. to Dismiss Appeal, Adkins v. Fischer, No. CAAP-18-0000409, Judiciary Information Management System dkt. 56 at 4 (concluding that the Judgment does not expressly dismiss the Third-Party Complaint, but contains the necessary express finding of "no just reason for delay" in entry of the Judgment as to one or more but fewer than all claims or parties, as HRCP Rule 54(b) requires).

exception when a non-compliant foreign LLC obtains a certificate of authority prior to final judgment. Here, it is undisputed that BEG had no certificate of authority when it commenced this lawsuit, Defendants first raised this deficiency in their answer to the Complaint (**Answer**), and BEG continued the suit for over three years without obtaining a certificate of authority. Under these circumstances, BEG could not cure its failure to comply with HRS § 428-1008(a) by obtaining a certificate of authority prior to the hearing on the Motion to Dismiss.

We further hold, however, that the Circuit Court erred in concluding that Adkins was not a real party in interest and in dismissing his claims on that basis. Viewed in the light most favorable to Plaintiffs, the facts alleged in the Complaint and the inferences drawn from those facts support a claim that Adkins was fraudulently induced to pay more for the Property than its fair market value and thus suffered damages in an amount to be proved at trial. Adkins therefore asserted a sufficient interest in the action in his own right to make him a real party in interest.

Accordingly, we affirm in part and vacate in part the Judgment and remand the case to the Circuit Court for further proceedings consistent with this opinion.

## I. Background

On January 28, 2013, Plaintiffs filed their Complaint. The Complaint alleged the following operative facts, among others:

- In 2006, the Fischers listed the Property for sale, describing it, in part, as having a "main house plus guest house." In January 2007, Adkins entered into a Deposit Receipt Offer and Acceptance Form agreement (**DROA**) with the Fischers to purchase the Property. The purchase price was $1.8 million. In the Seller's Real Property Disclosure Statement (**Disclosure Statement**), the Fischers failed to disclose that their simultaneous leasing of the two structures on the Property as transient vacation rentals "was illegal," and that the

4

smaller structure "was a Workshop, not a dwelling as defined by the [Comprehensive Zoning Ordinance (**CZO**)]." In reliance on the Disclosure Statement, Adkins made additional deposits into escrow and obtained a purchase money loan that was deposited into escrow for the purchase of the Property. Escrow for the transaction closed in March 2007.

- Thereafter, Adkins conveyed his "entire[] right, title and interest in and to" the Property to BEG. BEG was and is "a duly organized limited liability company under the laws of the State of Illinois, and has its principal place of business in Franklin, Tennessee." Adkins is BEG's "sole and managing member."

- From 2007 through 2010, Adkins and BEG leased both structures on the Property as transient vacation rentals. In 2010, the County of Kauaʻi passed Kauaʻi County Ordinance 904, relating to single family transient vacation rentals. Adkins and BEG applied under the ordinance for a permit to allow both structures to be used as nonconforming use transient vacation rentals. During the permit process, in or about July 2011, Adkins and BEG "learned for the first time ever" that their leasing of the two structures as transient vacation rentals "was illegal and in violation of the CZO" and that the smaller structure "was not a dwelling as defined by the CZO, but was instead a Workshop . . . ." The designation of the smaller structure as a workshop caused Adkins "to lose the opportunity to obtain a [nonconforming use transient vacation rental] permit" for the structure and "substantially diminished the fair market value" of the Property at the time of the purchase by Adkins and as of the date of the Complaint.

Based on these allegations, the Complaint asserted fourteen claims for relief, denominated as follows:

> (1) Civil Conspiracy, alleged against the Fischers and Anini Aloha;

(2) Fraudulent Concealment, alleged against the Fischers and Anini Aloha;

(3) Fraud and/or Negligent Misrepresentation, alleged against the Fischers;

(4) Tortious Interference with Prospective Economic Advantage, alleged against the Fischers and Anini Aloha;

(5) Tortious Interference with Contractual Relationships, alleged against the Fischers and Anini Aloha;

(6) Tortious Interference with Business Relationships, alleged against the Fischers and Anini Aloha;

(7) Intentional Interference with Economic Relations, alleged against the Fischers and Anini Aloha;

(8) Unfair and Deceptive Trade Practices (in violation of HRS Chapter 480), alleged against the Fischers and Anini Aloha;

(9) Beach of Contract, alleged against the Fischers;

(10) Breach of the Covenant of Good Faith and Fair Dealing, alleged against the Fischers;

(11) Violation of HRS §§ 508D-1 *et seq.*, alleged against the Fischers;

(12) Intentional Infliction of Emotional Distress, alleged against the Fischers and Anini Aloha;

(13) Negligent Infliction of Emotional Distress, alleged against the Fischers and Anini Aloha; and

(14) Attorneys' Fees and Costs, alleged against the Fischers and Anini Aloha.

Plaintiffs sought special damages, general damages, punitive damages, treble damages under HRS Chapter 480, pre- and post-judgment interest, attorneys' fees and costs.

On June 3, 2013, Defendants filed their Answer to the Complaint. The Answer included an affirmative defense alleging that "[BEG's] claims are barred because it does not have a certificate of authority to transact business in the State of Hawaiʻi."

On September 29, 2016, Defendants filed their Motion to Dismiss. Defendants argued that under HRS § 428-1008(a), BEG's

6

failure to have a certificate of authority barred it from maintaining the action in state court, so it lacked capacity to bring the suit.  Defendants also argued that after conveying the Property to BEG, Adkins had no interest in the Property and was not a real party in interest with the right to assert the claims in the Complaint.  Third-Party Defendants CBIP, Nickens, and HNSP filed substantive joinders to the Motion to Dismiss.

On October 19, 2016, Plaintiffs filed a Memorandum in Opposition to the Motion to Dismiss, and on October 24, 2016, Defendants filed a Reply in Support of the Motion to Dismiss.

On November 10, 2016, Plaintiffs filed a supplemental memorandum in opposition to the Motion to Dismiss, arguing that the State's issuance of a certificate of authority to BEG on October 28, 2016, should allow Plaintiffs to continue their action against Defendants.  On November 25, 2016, Plaintiffs filed a supplemental brief in support of the Motion to Dismiss, and Plaintiffs filed an additional supplemental opposition to the Motion to Dismiss.

The Circuit Court heard the Motion to Dismiss and joinders on May 17, 2017.  Following oral argument by the parties, the court stated in relevant part:

> Counsel, the Court has read the motion to dismiss, the opposition, the reply, the joinders that were filed, and I believe it's quite clear on its face this Court is in agreement with the arguments that were raised by the defendants.
>
> Based on your respective pleadings and arguments, this Court is granting the motion to dismiss and this would include the dismissal of the third-party complaints as well.

On June 19, 2017, the Circuit Court entered the Dismissal Order, and on May 8, 2018, the Circuit Court entered the Judgment.  This appeal followed.

## II.  Standards of Review

### A.   Motion for Judgment on the Pleadings

Although styled as a "Motion to Dismiss Under HRCP Rule 17," the Motion to Dismiss should be treated as a motion for

7

judgment on the pleadings pursuant to HRCP Rule 12(c).[3/]  See Ruf v. Honolulu Police Dept., 89 Hawaiʻi 315, 319, 972 P.2d 1081, 1085 (1999).

We review a circuit court's order granting a motion for judgment on the pleadings *de novo*.  See In re Office of Information Practices Opinion Letter No. F16-01, 147 Hawaiʻi 286, 294, 465 P.3d 733, 741 (2020) (citing Hawaiʻi Med. Ass'n v. Hawaiʻi Med. Serv. Ass'n, 113 Hawaiʻi 77, 91, 148 P.3d 1179, 1193 (2006)).

> In a motion for judgment on the pleadings under HRCP Rule 12(c), the movant must clearly establish that no material

---

[3/]     Defendants purported to bring the Motion to Dismiss "pursuant to Rule 17 of the [HRCP.]"  As to Defendants' argument that BEG lacked capacity to maintain the lawsuit, under HRCP Rule 9(a), a party who wishes to raise an issue as to capacity must do so by "specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."  Here, Defendants' Answer included an affirmative defense alleging that BEG's claims were barred because BEG did not have a certificate of authority.  See 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1294 (4th ed.) (construing analogous Federal Rules of Civil Procedure (**FRCP**) Rule 9(a):  "Although the specific denial as to a party's capacity, authority, or legal existence required by [FRCP] Rule 9(a) may not be regarded by some — strictly speaking — as an affirmative defense, courts tend to treat it that way.")  The issue of BEG's capacity to maintain the lawsuit was also properly raised by a pretrial motion.  See id.  ("A specific denial of capacity, authority, or legal existence should be made in the responsive pleading or, if the lack of capacity, authority, or legal existence issue appears on the face of the pleadings or is discernible therefrom, the issue can be raised by a motion to dismiss for failure to state a claim for relief.  A motion to strike, a motion for judgment on the pleadings, or a motion for summary judgment may also be employed to raise capacity challenges, although parties must be careful to avoid waiver." (footnotes omitted)).

As to Defendants' argument that Adkins was not a real party in interest, "a HRCP Rule 17(a) objection may be made in [a defendant's] answer as an affirmative defense or by a pretrial motion."  Lagondino v. Maldonado, 7 Haw. App. 591, 596, 789 P.2d 1129, 1132 (1990) (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1554 (1990)); see 6A Wright, Miller & Kane, supra (3d ed. 2010) (construing analogous FRCP Rule 17(a):  "[A] real-party-in-interest objection closely resembles the defense of failure to state a claim for relief because it presupposes that plaintiff does not have the substantive right to enforce the claim being made.  Treated as a Rule 12(b)(6) defense, it can be raised either by motion or in the answer." (footnote omitted)); Siemens USA Holdings, Inc. v. U.S., 960 F. Supp. 2d 221, 223-24 (D.D.C. 2013) ("[A] motion to dismiss under [FRCP] Rule 12(b)(6) is one proper method of bringing [a real-party-in-interest] issue to the Court.  'A real-party-in-interest defense can be raised as a Rule 12(b)(6) motion because the plaintiff is not the person who should be bringing the suit,' and thus, 'the plaintiff has failed to state a claim upon which relief can be granted.'" (original brackets and ellipsis omitted) (quoting Whelan v. Abell, 953 F.2d 663, 672 (D.C. Cir. 1992))).

Here, the pleadings were closed when Defendants filed the Motion to Dismiss.  Accordingly, the motion is properly viewed as a motion for judgment on the pleadings pursuant to HRCP Rule 12(c).

> issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.
>
> Our task on appeal is to determine whether the circuit court's order supports its conclusion that the movant is entitled to judgment as a matter of law and, by implication, that it appears beyond a doubt that the nonmoving party can prove no set of facts in support of its claim that would entitle it to relief under any alternative theory.

Id. (brackets omitted) (quoting Ruf, 89 Hawaiʻi at 319 972 P.2d at 1085).

## B.    Statutory Interpretation

"The interpretation of a statute is a question of law reviewable de novo." McLaren v. Paradise Inn Hawaii LLC, 132 Hawaiʻi 320, 327, 321 P.3d 671, 678 (2014) (citing Lindinha v. Hilo Coast Processing Co., 104 Hawaiʻi 164, 171, 86 P.3d 973, 980 (2004)). When construing a statute, we apply the following well-settled principles:

> We first examine the language of the statute itself. If the language is plain and unambiguous, we must give effect to its plain and obvious meaning. Also, implicit in statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language of the statute itself. Finally, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. When there is ambiguity, the meaning of ambiguous words may be sought by examining the context or resorting to extrinsic aids to determine legislative intent.

State v. Carlton, 146 Hawaiʻi 16, 22, 455 P.3d 356, 362 (2019) (internal citations omitted) (citing State v. Choy Foo, 142 Hawaiʻi 65, 72, 414 P.3d 117, 124 (2018); Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawaiʻi 184, 194, 159 P.3d 143, 153 (2007)). Additionally, as relevant here, the Hawaiʻi legislature has directed that "[a]ll provisions of uniform acts adopted by the State shall be so interpreted and construed as to effectuate their general purpose and to make uniform the laws of the states and territories which enact them." HRS § 1-24 (2009).

### III.  Discussion

## A.  "Ratification" Under HRCP Rule 17(a)

Relying on HRCP Rule 17(a), Plaintiffs contend that the Circuit Court should have "permitt[ed them] to ratify the action by obtaining the certificate of authority" after the Complaint was filed.  Plaintiffs argue that allowing ratification under Rule 17(a) "would not have affected the original complaint's factual allegations as to the events or the parties and would in no way prejudice the Defendants."  In response, Defendants argue that Plaintiffs "misunderstand[] . . . the distinction between [BEG's] statutory lack of capacity, which required dismissal of its Complaint, and the real party in interest requirement, which was irrelevant to the dismissal as to [BEG]."

The legal concepts of real party in interest and capacity to sue, though both addressed by HRCP Rule 17, are distinct.  HRCP Rule 17(a) provides, in relevant part:

> **Rule 17.    PARTIES PLAINTIFF AND DEFENDANT; CAPACITY.**
>
> **(a)  Real party in interest.**  Every action shall be prosecuted in the name of the real party in interest . . . .  No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

See Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawaiʻi 251, 279, 151 P.3d 732, 760 (2007) ("HRCP Rule 17(a) . . . requires the prosecution of an action 'in the name of the party who, by the substantive law, has the right sought to be enforced[.]'" (footnote omitted) (quoting Lagondino, 7 Haw. App. at 596, 789 P.2d at 1132)); 6A Wright, Miller & Kane, supra § 1542 (construing analogous FRCP Rule 17(a):  "[T]he real-party-in-interest principle is a means to identify the person who possesses the right sought to be enforced.").

HRCP Rule 17(c), on the other hand, allows the trial court to appoint a next friend or guardian ad litem for a minor or "incompetent person," *i.e.*, a person lacking legal capacity to

sue, for purposes of prosecuting a lawsuit.  See Leslie v. Estate of Tavares, 91 Hawaiʻi 394, 400, 984 P.2d 1220, 1226 (1999); see also Moore v. Matthew's Book Co., 597 F.2d 645, 647 (8th Cir. 1979) ("The question of capacity to sue is whether the person bringing the suit has authority to use the courts of that jurisdiction." (citing Basch v. Talley Indus., Inc., 53 F.R.D. 9 (S.D.N.Y. 1971))); 6A Wright, Miller & Kane, supra, § 1542 ("capacity is conceived to be a party's personal right to litigate in a federal court").  Thus, it is possible to be the real party in interest and yet lack capacity to sue because, for example, the party is a minor or has become mentally incompetent, see 6A Wright, Miller & Kane, supra, § 1542, or is a business entity that lacks the statutory authority to sue, see, e.g., In re Village of Chestnut Ridge v. Town of Ramapo, 45 A.D.3d 74, 80 (N.Y. App. Div. 2007).

Here, the Motion to Dismiss did not assert, and the Circuit Court did not rule, that BEG was not a real party in interest under HRCP Rule 17(a).  Rather, Defendants argued and the Circuit Court agreed that BEG lacked capacity to bring suit against Defendants because BEG did not have a certificate of authority under HRS chapter 428 when the Complaint was filed. Plaintiffs cite no authority, and we have found none, suggesting that "ratification" under HRCP Rule 17(a) can be used to remedy a plaintiff's lack of legal capacity to sue.  Thus, the Circuit Court did not violate HRCP Rule 17(a) in dismissing BEG's claims against Defendants.  The dispositive issue, which we address below, is whether BEG lacked capacity to "maintain an action or proceeding" against Defendants pursuant to HRS § 428-1008(a) prior to dismissal of the Complaint.

## B.  Failure to Obtain a Certificate of Authority

Plaintiffs contend that the Circuit Court erred in granting the Motion to Dismiss pursuant to HRS chapter 428, where BEG had obtained a certificate of authority before the motion was heard, thus "cur[ing]" BEG's initial failure to comply with the "registration requirements" of chapter 428.  Plaintiffs further argue that nothing in the statute or its legislative history

11

reflects an intent "to revoke the [capacity] of a foreign LLC to file suit if a foreign LLC fails to obtain a certificate of authority prior to the commencement of the action."  In response, Defendants argue that HRS § 428-1008(a) prevents an LLC that has failed to obtain a certificate of authority from commencing or continuing an action in this state, and that the legislature did not intend to allow a foreign LLC to cure such a failure after commencing litigation.

Hawaii's Uniform Limited Liability Company Act (**LLC Act**), HRS chapter 428, is "based in significant part on the Uniform Limited Liability Company Act [(**ULLCA**)] adopted in 1994 by the National Conference of Commissioners on Uniform State Laws[.]"  Conf. Comm. Rep. No. 82 on S.B. No. 2723, in 1996 House Journal, at 996-97, in 1996 Senate Journal, at 778-79.  HRS § 428-1002 (Supp. 2021) allows foreign LLCs[4/] to obtain a certificate of authority to transact business in Hawaiʻi.  HRS § 428-1008 addresses the effects of an LLC's failure to obtain such a certificate.  As set forth below, the failure of a foreign LLC to have a certificate of authority does not prevent that LLC from "defending" an action or proceeding in Hawaiʻi, but does prevent it from "maintaining" an action or proceeding in the state:

> **§ 428-1008  Effect of failure to obtain certificate of authority**.  (a)  A foreign limited liability company transacting business in this State may not maintain an action or proceeding in this State unless it has a certificate of authority to transact business in this State.
>
> (b)  The failure of a foreign limited liability company to have a certificate of authority to transact business in this State does not impair the validity of a contract or act of the company or prevent the foreign limited liability company from defending an action or proceeding in this State.
>
> (c)  Limitations on the personal liability of managers, members, and their transferees are not waived solely by transacting business in this State without a certificate of authority.
>
> (d)  If a foreign limited liability company transacts business in this State without a certificate of authority,

---

[4/]    A foreign LLC is defined as "an unincorporated entity organized under laws other than the laws of this State which afford limited liability to its owners comparable to the liability under [HRS] section 428-303 and is not required to obtain a certificate of authority to transact business under any law of this State other than this chapter."  HRS § 428-101 (2004).

> service of process may be made upon the company as set forth in section 428-110(b) at any address used by the company as its address for purposes of its business transactions.
>
> (e) A foreign limited liability company which transacts business in this State without a certificate of authority, shall be liable to the State in an amount equal to all fees and penalties which would have been imposed by this chapter upon that foreign limited liability company had it obtained such a certificate and filed all records and reports required by this chapter. The attorney general may bring proceedings to recover all amounts due this State under the provisions of this section.

(Emphases added).

Here, there is no dispute that BEG was a foreign LLC transacting business in Hawaiʻi subject to the provisions of HRS § 428-1008. Additionally, Plaintiffs appear to concede that when they filed their Complaint, BEG did not have a certificate of authority. Plaintiffs argue, however, that HRS § 428-1008(a) bars only "maintaining" an action in these circumstances, which Plaintiffs construe as a bar on "continuing" rather than "commencing" an action. Plaintiffs further argue that before the Motion to Dismiss was heard, BEG obtained a certificate of authority, allowing it to continue its suit against Defendants and rendering the Motion to Dismiss moot.

Defendants, on the other hand, argue that "[t]he phrase 'maintain an action' means 'the commencement of an action or the continuation of an action already begun[,]'" as stated in P.K. Springfield, Inc. v. Hogan, 621 N.E.2d 1253, 1258 (Ohio 1993) (citing Black's Law Dictionary 859 (5th ed. Rev. 1979)). Defendants construe HRS § 428-1008(a) to mean that, "except when a foreign LLC possesses a certificate of authority, it cannot commence or continue an action in State courts." Defendants argue that because BEG did not have a certificate of authority when it filed suit, it lacked capacity to sue them, and the plain language of HRS § 428-1008 precludes a foreign LLC from "curing" that lack of capacity by later obtaining a certificate of authority.

Pursuant to HRS § 428-1008(a), a foreign LLC such as BEG may not "maintain an action or proceeding" in Hawaiʻi "unless it has a certificate of authority . . . ." The quoted phrases

13

are not defined in HRS chapter 428.[5]

> To effectuate a statute's plain language, its words "must 'be taken in their ordinary and familiar signification, and regard is to be had to their general and popular use.'" See State v. Guyton, 135 Hawaiʻi 372, 378, 351 P.3d 1138, 1144 (2015) (quoting In re Taxes of Johnson, 44 Haw. 519, 530, 356 P.2d 1028, 1034 (1960)); see also HRS § 1-14 (2009). "In conducting a plain meaning analysis, 'this court may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined.'" Guyton, 135 Hawaiʻi at 378, 351 P.3d at 1144 (quoting State v. Pali, 129 Hawaiʻi 363, 370, 300 P.3d 1022, 1029 (2013)).

Wells Fargo Bank, N.A. v. Omiya, 142 Hawaiʻi 439, 449-50, 420 P.3d 370, 380-81 (2018).

Black's Law Dictionary includes multiple definitions of "maintain," including the definition relied on by Plaintiffs, "[t]o continue (something)." Black's Law Dictionary 1142 (11th ed. 2019). But Black's also defines "maintain" as "[t]o assert (a position or opinion)[,]" id., lending support to Defendants' position that the phrase "maintain an action" means "the commencement of an action or the continuation of an action already begun." These differing definitions suggest ambiguity in the phrase "maintain an action or proceeding."

Black's does not define "unless," but Webster's does. "Unless" means "except under the circumstances that[.]" Webster's Encyclopedic Unabridged Dictionary 2080 (1996 ed.). The same source defines "have" as "to possess[,]" which fits the context of HRS § 428-1008. Id. at 877.

To the extent there is ambiguity in the phrase "maintain an action or proceeding," we may examine the legislative history of HRS chapter 428. As Plaintiffs point out, the purpose of the LLC Act was to allow for the formation of LLCs in Hawaiʻi, with the goal of "provid[ing] an attractive incentive for new businesses to be established in the State" and "promot[ing] economic development in the State." Conf. Comm. Rep. No. 82 on S.B. No. 2723, in 1996 House Journal, at 996-97, in 1996 Senate Journal, at 778-79. Although the legislative history does not spell out the specific purpose of HRS

---

[5] The language of HRS § 428-1008(a) is identical to that of ULLCA § 1008(a). The ULLCA also does not define the quoted phrases.

§ 428-1008, it is reasonable to infer based on the section's plain language that the legislature intended to encourage foreign LLCs doing business in Hawaiʻi to obtain certificates of authority before seeking affirmative relief in the state's courts.

In construing the phrase "maintain an action or proceeding," we may also examine HRS § 428-1008 in the context of HRS § 414-432 (2004), which addresses the consequences of a foreign corporation's failure to obtain a certificate of authority to transact business in Hawaiʻi pursuant to HRS § 414-432.  See Omiya, 142 Hawaiʻi at 450, 420 P.3d at 381 ("What is clear in one statute may be called upon in aid to explain what is doubtful in another.'" (quoting State v. Kamanaʻo, 118 Hawaiʻi 210, 218, 188 P.3d 724, 732 (2008)).  HRS § 414-432 states, in relevant part:

> **Consequences of transacting business without authority.**  (a)  A foreign corporation transacting business in this State without a certificate of authority may not maintain a proceeding in any court in this State until it obtains a certificate of authority.
>
> . . . .
>
> (c)  A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority.  If it so determines, the court may further stay the proceeding until the foreign corporation or its successor obtains the certificate.
>
> . . . .
>
> (e)  Notwithstanding subsections (a) and (b), the failure of a foreign corporation to obtain a certificate of authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in this State.

(Emphases added.)

HRS § 414-432(a) substantially mirrors HRS § 428-1008(a) to the extent that both a foreign LLC and a foreign corporation transacting business in Hawaiʻi without a certificate of authority may not "maintain" a "proceeding"[6] in Hawaiʻi

_____

[6]  Black's Law Dictionary defines "proceeding," in relevant part, as follows:

> 1. The regular and orderly progression of a lawsuit, including all acts and events between the time of

(continued...)

"unless" (in the case of a foreign LLC) or "until" (in the case of a foreign corporation) the entity obtains a certificate of authority.  However, in contrast to HRS § 428-1008, HRS § 414-432 includes an express stay and cure provision, *i.e.*, HRS § 414-432(c), which authorizes a court to stay a proceeding "commenced" by a foreign corporation without a required certificate of authority "until" the corporation (or its successor) obtains the certificate.  Such a stay and cure provision would presumably not be necessary but for the effect of HRS § 414-432(a) on the corporation's capacity to commence as well as to continue the proceeding without a certificate of authority.  Stated differently, a court would not need to stay a proceeding "commenced" by a foreign corporation without a certificate of authority if such corporation had the capacity to commence the proceeding and merely had to obtain the requisite certificate at some point prior to judgment or other termination of the proceeding.  Comparing HRS § 428-1008 to HRS § 414-432 thus supports the conclusion that the phrase "maintain an action or proceeding" means the commencement or continuation of an action or proceeding.[7]

---

[6]  (...continued)
commencement and entry of judgment.  2. Any procedural means for seeking redress from a tribunal or agency.  3. An act or step that is part of a larger action.  4. The business conducted by a court or other official body; a hearing. 5. *Bankruptcy.*  A particular dispute or matter arising within a pending case — as opposed to the case as a whole.

"'Proceeding' is a word much used to express the business done in courts.  A proceeding in court is an act done by the authority or direction of the court, express or implied.  It is more comprehensive than the word 'action,' but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment. . . ."

Black's Law Dictionary at 1457 (quoting John W. Salmond, Essays in Jurisprudence and Legal History 3-4 (1891)); see id. (further describing the term "action," making it clear that an "action" also means a lawsuit brought in court).

[7]     Defendants also correctly observe that the Hawaiʻi legislature has used the phrase "maintain an action" in other contexts seemingly to indicate the commencement, as well as the continuation, of an action.  See, e.g., HRS § 663-3(a) (2016) ("When the death of a person is caused by the wrongful act . . . of any person, the deceased's legal representative . . . may maintain an action against the person causing the death . . . ."); HRS § 668-8.5 (2016)
(continued...)

16

Comparing these two statutes also sheds light on Plaintiffs' argument that BEG "cured" its initial failure to comply with HRS § 428-1008(a) by obtaining a certificate of authority prior to the hearing on the Motion to Dismiss. HRS § 414-432 prohibits a foreign corporation without a certificate of authority from maintaining a proceeding "<u>until</u>" it obtains a certificate. (Emphasis added.) When used as a conjunction, "until" means "up to the time that or when[.]" Webster's Encyclopedic Unabridged Dictionary, <u>supra</u>, at 2089; <u>see</u> <u>Capital City Energy Group, Inc. V. Kelley Drye & Warren LLP</u>, No. 2:11-cv-00207, 2011 WL 5175617, at *4 (S.D. Ohio Oct. 31, 2011) ("The meaning of the word 'until' provides an inference that a proceeding may be continued once a foreign corporation obtains a license."). HRS § 414-432 also expressly provides a foreign corporation an opportunity to cure a lack of certificate, by authorizing the court to stay a proceeding to determine if the corporation requires a certificate of authority and, if it does, to continue the stay "<u>until</u> the foreign corporation . . . obtains the certificate." HRS § 414-432(c) (emphasis added).

By contrast, HRS § 428-1008(a) uses the word "unless" rather than "until," and includes no provision for a stay pending an LLC's obtaining a certificate. The legislature's use of the word "until" in HRS § 414-432, along with the express stay and cure provision, reflects the legislative intent to allow a foreign corporation to cure, during the pendency of a proceeding, a failure to obtain a certificate before filing suit. The same intent is not reflected in the language of HRS § 428-1008. Had the legislature intended to afford foreign LLCs the same

---

[7/] (...continued)
(in real property partition actions, "a person who . . . claims to hold by [paramount title] . . . may maintain an action asserting that person's title against any or all of the parties"); HRS § 605-15.2 (2016) ("the attorney general may maintain a criminal action against any person who violates section 605-14"); HRS § 605-15.1 (2016) ("The attorney general or any bar association in this State may maintain an action for violations of section 605-14."); HRS § 603-23.5 (2016) ("Any person . . . or the attorney general or any county attorney, prosecuting attorney, or corporation counsel may maintain an action to enjoin a continuance of any act in violation of section 708-871 . . . ."); HRS § 634-1 (2016) ("The assignee of any nonnegotiable chose in action, assigned in writing, may maintain thereon in the assignee's own name any action which, but for the assignment, might be maintained by the assignor . . . .").

17

opportunity to cure their non-compliance with state law in this context, it presumably would have done so.  See, e.g., Lanai Co. v. Land Use Comm'n, 105 Hawaiʻi 296, 318, 97 P.3d 372, 394 (2004) ("If the legislature intended to grant the LUC enforcement powers it could have expressly provided the LUC with such power."); Morgan v. Planning Dep't, County of Kauaʻi, 104 Hawaiʻi 173, 188, 86 P.3d 982, 997 (2004) (ruling that if the legislature had intended to grant the commission injunctive powers, it would have done so expressly).

Case law in other jurisdictions with LLC statutes similar to HRS § 428-1008 also undermines Plaintiffs' cure argument.  For example, in Sta-Rite Industries, LLC v. Preferred Pump & Equipment, No. 5:08 CV 1072, 2008 WL 3874676 (N.D. Ohio Aug. 14, 2008), the court applied an Ohio statute providing that "a foreign [LLC] transacting business in [Ohio] may not maintain any action or proceeding in any court of this state until it has registered in this state in accordance with [various code sections]."  Id. at *1 (original brackets omitted) (quoting Ohio Rev. Code § 1705.58(A) (since repealed)).  The court dismissed the action, holding that the law required "a [LLC] to register pursuant to [statute] before filing an action in Ohio and that failure to do so cannot be cured by subsequent registration." Id. at *3; see Blues Events, LLC v. Lincoln Prof'l Baseball, Inc., No. 4:13-CV-3101, 2014 WL 347059, at *3 (D. Neb. Jan. 30, 2014) (holding that under Nebraska's Limited Liability Company Act, which contains language identical to HRS section 428-1008(a), the plaintiff, lacking a certificate of authority, "lacks capacity under Nebraska law to bring these claims in Nebraska.").[8]

---

[8]    Similarly, in P.K. Springfield, the court construed an Ohio statute providing that "no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license."  621 N.E.2d at 1256 (emphasis omitted) (quoting Ohio Rev. Code § 1703.29(A)).  The court held:

> [T]he beginning or continuation of an action by an unlicensed corporation clearly violates [the statute]. Furthermore, the statute does not expressly provide an exception in cases where the corporation acquires a license prior to judgment, or indeed at any other time after it commences the action.  Thus, the failure of a corporation to

(continued...)

Plaintiffs' reliance on <u>Nolte v. MT Tech. Enters., LLC</u>, 726 S.E.2d 339 (Va. 2012), and <u>A Guy Named Moe, LLC v. Chipotle Mexican Grill of Colo., LLC</u>, 135 A.3d 492 (Md. 2016), is misplaced.  Both cases are readily distinguishable from this one, based on the differing language of the controlling LLC statutes, which the courts construed as allowing a non-compliant foreign LLC to "cure" its failure to comply with state registration requirements.

In <u>Nolte</u>, the Virginia LLC statute stated that "a foreign limited liability company transacting business in the Commonwealth may not maintain any action, suit, or proceeding in any court of the Commonwealth <u>until</u> it has registered in the Commonwealth."  726 S.E.2d at 345 (original emphasis and brackets omitted) (quoting Va. Code Ann. § 13.1-1057(A)).  The court relied on a prior case construing similar language in a statute that imposed a registration requirement on a foreign corporation.  In the prior case, the court reasoned in part that the language "takes no right away from the offending party after compliance.  When its terms are met, <u>the barriers theretofore existing are removed</u>." <u>Id.</u> (emphasis added).  Although the court in <u>Nolte</u> also construed "maintain" as meaning to continue rather than to commence, it appears that the statute's use of the phrase "until it has registered" led the court to conclude that an LLC could cure a failure to comply with registration requirements during litigation.  <u>Cf</u>. <u>Capital City Energy Group, Inc.</u>, 2011 WL 5175617, at *4 ("The meaning of . . . 'until' provides an inference that a proceeding may be continued once a foreign corporation obtains a license.").

In <u>A Guy Named Moe</u>, the applicable statute explicitly allowed a foreign LLC to cure a previous failure to comply with registration requirements.  The statute stated that if a foreign LLC does business in Maryland without complying with registration

---

<u>8/</u>  (...continued)
procure the required license prior to maintaining an action violates [the statute] and may be a sufficient basis for a judicial remedy for that violation, regardless of whether the corporation obtains a license prior to final judgment.

<u>Id.</u> at 1258.

requirements, the LLC "may not maintain suit in any court of this State, <u>unless the limited liability company shows to the satisfaction of the court</u>" that the LLC has paid the specified penalty and registered, or that it is no longer doing business in the state. 135 A.3d at 498 (quoting Md. Code Ann., Corps. & Ass'ns § 4A-1007(a) (2007)) (emphasis added)). The court interpreted "maintain" as meaning "to continue" because that word, "<u>coupled with</u> 'unless the limited liability company shows to the satisfaction of the court,' indicate[d] that the Legislature intended to permit a noncompliant foreign [LLC] to 'cure' its failure to comply with registration requirements, even though having failed to register before filing suit." 135 A.3d at 499 (emphasis added). In contrast to the Maryland statute, which deprives a foreign LLC of capacity to maintain an action in the state unless the LLC makes a showing of certification and satisfaction of penalties during the course of litigation, the Hawaiʻi LLC statute deprives a foreign LLC of such capacity unless it has a certificate of authority, *i.e.*, without a similar cure provision.[9]

Based on the plain language of HRS § 428-1008(a), its context and implicit purpose, our examination of the similarities and distinctions between HRS § 428-1008 and HRS § 414-432, and our review of case law in other jurisdictions with similar statutes, we construe HRS § 428-1008(a) to mean that a foreign LLC transacting business in Hawaiʻi may not commence or continue an action or proceeding in the state except when the LLC has a certificate of authority. Thus, the commencement or continuation

---

[9]     Other cases cited by Plaintiffs also involved statutes with language materially different from the language of HRS § 428-1008(a). <u>See, e.g.</u>, <u>Super Prods., LLC v. Intracoastal Envtl., LLC</u>, 210 So. 3d 240, 241 (Fl. Dist. Ct. App. 2017) (construing Florida statute providing that "[a] court may stay a proceeding commenced by a foreign limited liability company or its successor or assignee until it determines whether the foreign limited liability company or its successor requires a certificate of authority" and that "the court may further stay the proceeding until the foreign limited liability company or its successor obtains the certificate." (quoting Fla. Stat. § 605.0904(3) (2014)); <u>Commercial Credit Corp. v. Boyko</u>, 137 A. 534, 536 (N.J. 1927) (construing New Jersey statute stating in part:  "<u>Until</u> such corporation so transacting business in this state shall have obtained said certificate of the secretary of state, it shall not maintain any action in this state . . . ." (emphasis added)); <u>FH Partners LLC v. STS Refill America, LLC</u>, 2012 N.Y. Slip Op. 31737 (N.Y. Sup. Ct. 2012) ("unless and until" language in state statute).

of an action by a non-compliant foreign LLC violates HRS §
428-1008(a) and subjects the action to dismissal. Furthermore,
the statute does not provide an exception where the non-compliant
foreign LLC obtains a certificate of authority prior to final
judgment.

Here, there is no dispute that BEG had no certificate
of authority when it commenced this lawsuit, Defendants first
raised this deficiency in their Answer, and BEG continued the
suit for over three years without obtaining a certificate of
authority. Under these circumstances, BEG could not cure its
failure to comply with HRS § 428-1008(a) by obtaining a
certificate of authority prior to the hearing on the Motion to
Dismiss. Accordingly, the Circuit Court did not err in granting
the Motion to Dismiss pursuant to HRS § 428-1008.[10]

## C. Whether Adkins Was a Real Party in Interest

Plaintiffs contend that the Circuit Court erred in
determining that Adkins was not a real party in interest.
Plaintiffs argue that this action stems from the original sale of
the Property to Adkins, and that as a result of Defendants'
alleged breach of contract and tortious conduct, Adkins "suffered
the damages from the loss in value of the . . . Property and loss
of income generated by his rentals." Plaintiffs also argue that
the Circuit Court should have granted their request for leave to
amend the Complaint to allow Adkins to transfer the Property from
BEG back to Adkins "to avoid the dismissal of the Complaint."

In response, Defendants contend that Adkins is not a
real party in interest "because the claimed damages arise from an
alleged loss of rental income, which accrued to [BEG] alone."
According to Defendants, "[v]iewing the Complaint's allegations

---

[10] We note that Plaintiffs do not contend that the Circuit Court
erred in dismissing the Complaint with prejudice, rather than without
prejudice, pursuant to HRS § 428-1008, such that BEG might have re-filed the
action following dismissal. See Corco, Inc. v. Ledar Transport, Inc., 946
P.2d 1009, 1010 (Kan. Ct. App. 1997) ("[T]he proper remedy was to dismiss [the
unregistered entity's] counterclaim without prejudice rather than with
prejudice. This would leave [the entity] the opportunity to comply with the
statutes and then reassert its claim against [the defendant]. On the other
hand, it would also leave the risk that the statute of limitations might run
against [the entity].") Accordingly, we do not decide whether the proper
remedy in these circumstances was to dismiss BEG's claims without prejudice.

in the light most favorable to [Plaintiffs], the alleged economic losses resulted from an alleged inability to legally rent the second structure on the Property beginning in 2011[,]" and these alleged losses were those of BEG as a distinct legal entity and the sole owner of the Property.

As previously stated, the real-party-in-interest principle is a means to identify the party who has the right sought to be enforced.  See Kahala Royal Corp., 113 Hawaiʻi at 279, 151 P.3d at 760.; see also 6A Wright, et al., supra, § 1542 ("[T]he term [real party in interest] directs attention to whether plaintiff has a significant interest in the particular action plaintiff has instituted[.]").  "The rationale of [HRCP] [R]ule [17a] is to protect the defendant from a multiplicity of suits, to allow defendant to present all [its] defenses, to protect defendant from multiple liability."  Lagondino, 7 Haw. App. at 596, 789 P.2d at 1132 (citing Pace v. General Elec. Co., 55 F.R.D. 215, 218 (W.D. Pa. 1972)).

Here, the Complaint alleges, among other things, that: (1) Adkins entered into the DROA with the Fischers to purchase the Property; (2) the Fischers were obligated to disclose to Adkins any fact, defect, or condition that would be expected to measurably affect the value of the Property; (3) the Fischers failed to disclose that their simultaneous leasing of the two structures on the Property as transient vacation rentals "was illegal," and that the smaller structure "was a Workshop, not a dwelling as defined by the CZO"; (4) in reliance on the Fischers' representations and disclosures, Adkins purchased the Property for $1.8 million; and (5) the "Workshop designation on the [smaller structure] substantially diminished the fair market value" of the Property at the time of the purchase by Adkins. Based on these allegations, the Complaint further asserts, for example, that: (1) Defendants' purpose was to "fraudulently induce [Adkins] to pay substantially in excess of the actual fair market value of the . . . Property"; (2) in reliance on the Fischers' false representations, Adkins placed additional funds into escrow, did not exercise his right to cancel the DROA, and borrowed money to close the sale of the Property; and (3) as a

22

result of the Fishers' breaches of the DROA and Disclosure Statement and other wrongful conduct, Adkins (and BEG) have been damaged "in an amount to be proved at trial."

Viewed in the light most favorable to Plaintiffs, the facts alleged in the Complaint and the inferences drawn from those facts support a claim, among others, that Adkins was fraudulently induced to pay more for the Property than its fair market value and thus suffered damages in an amount to be proved at trial. Adkins therefore asserted a sufficient interest in the action in his own right to make him a real party in interest. Accordingly, the Circuit Court erred in concluding that Adkins was not a real party in interest and in dismissing his claims on that basis.[11]

## IV. Conclusion

For the reasons discussed above, we affirm in part and vacate in part the May 8, 2018 Judgment, entered by the Circuit Court of the Fifth Circuit. The Judgment is affirmed to the extent that the Circuit Court dismissed the claims in the Complaint asserted by Plaintiff-Appellant Brown Eyed Girl, LLC. The Judgment is vacated to the extent that the Circuit Court dismissed the claims in the Complaint asserted by Plaintiff-Appellant Richard K. Adkins. The case is remanded to the Circuit Court for further proceedings consistent with this opinion.

On the briefs:                          /s/ Lisa M. Ginoza
                                        Chief Judge
Donna E. Richards and
Mark R. Zenger
(Richards & Zenger)                     /s/ Clyde J. Wadsworth
for Plaintiffs-Appellants               Associate Judge


David J. Minkin,                        /s/ Karen T. Nakasone
Jesse J.T. Smith, and                   Associate Judge
Jordan K. Inafuku

---

[11] Because we conclude that Adkins is a real party in interest based on the allegations of the Complaint, we need not address Defendants' alternative arguments. Similarly, because Adkins is a real party in interest, we need not decide the extent to which, if any, Adkins can claim damages arising from the alleged loss of rental income as his own.

(McCorriston Miller Mukai MacKinnon LLP)
for Defendants/Third-Party Plaintiffs-Appellees
Gary R. Fischer, Samantha K. Fischer, and Anini Aloha Properties, Inc.